**GOMES v. TILLINGHAST, Commissioner of Immigration.**

District Court, D. Massachusetts. January 30, 1930.

No. 4165.

Minkin & Rusitzky, of New Bedford, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John W. Schenck, Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge. Habeas corpus to the Commissioner of Immigration to secure the discharge of the petitioner who is held on warrant proceedings for deportation.

Gomes is a native of the Cape Verde Islands. After several previous visits to this country he arrived here in 1913 and was legally admitted. He resided here continuously until November, 1925, when he went to Cuba under circumstances which might reasonably be viewed as flight from arrest for a serious crime; the immigration authorities so interpreted his conduct. They also found, solely from Gomes' statements, not unreasonably in my opinion, that he was accompanied in his flight by the wife of a neighbor and committed adultery with her—a finding perhaps hardly fair to the woman, but of which Gomes has no ground to complain. He was indicted shortly afterwards in the state court for breaking and entering and larceny. On this indictment he was brought back to this country from Cuba on extradition proceedings. He arrived at New York on December 28, 1925, under arrest and was admitted, by the immigration authorities, as a prisoner in custody.

He pleaded guilty to the indictment and was sentenced to imprisonment for two years. While in prison under this sentence, warrant proceedings for deportation were instituted against him on the ground that, as he was punishable for a crime when he was brought back here, he was then likely to become a public charge (as a prisoner), and was therefore subject to exclusion and consequently to deportation when his punishment was over. This view was fundamentally wrong in law; and Gomes was discharged from that deportation order through habeas corpus proceedings in this court.

In connection with those proceedings Inspector Hagberg went to the prison where Gomes was confined. He had the prisoner brought into his presence by the keeper, and put him through a searching examination, in the course of which Gomes was asked with much detail about his relations with the woman above referred to, and admitted that he had had "immoral relations" with her. The alien, who understands English only imperfectly, testified in the present proceedings that he did not realize what the expression meant, and had never committed adultery as charged. Inspector Hagberg testified orally in contradiction of this, saying that an interpreter was used and that the meaning of the inquiry was made perfectly clear to Gomes. The immigration authorities accepted the inspector's statement, and found accordingly that Gomes had made the admission of adultery relied upon as a ground of deportation.

The present deportation proceedings are based upon that charge and admission, and upon the plea of guilty as an admission of the breaking and entering and larceny. Two principal points are made for the defendant: First, that the excluding provisions of the Immigration Act do not apply to persons brought into the country in custody. Second, that admissions of crime, in order to furnish a ground for deportation, must be voluntary, and the admissions of adultery were not of that character.

As to the first: I see no reason why Gomes' right to remain in the United States should be increased by the fact that, instead of presenting himself for admission in the ordinary way, he was brought into the country for punishment. The state of Massachusetts had the power to bring back this alien in order to punish him; but its doing so does not give him the right to remain here, if he comes within a deportable class under the laws of the United States. The plea of guilty was an admission of the most conclusive character that the alien had committed the crime charged against him. As that crime unquestionably involved moral turpitude and antedated Gomes' return to this country, his plea and his conviction would clearly have rendered him deportable, if the offense and the prosecution had taken place outside this country. I am unable to see why they should have less effect because they occurred here. While an alien is not deportable for crimes committed here more than five years after his entry, if he chooses to leave the country, he forfeits his right of asylum; and his right to re-enter and to remain here depends upon the facts as they exist when he seeks to return. The "Summary and Findings" by the single in-

spector did not contain any finding with respect to the plea of guilty; but the Board of Review affirmed the deportation order upon the grounds that the alien had admitted both adultery and larceny. Upon the latter ground the order was justified.

 It should perhaps be added that the second point for the petitioner, above stated, is in my opinion well taken. In Howes, Inspector, v. Tozer, 3 F.(2d) 849, page 852 (C. C. A. 1st) it is said "that the statute contemplates a voluntary admission" of guilt. It would be hard to imagine a statement obtained without the use of physical force which was less voluntary than that by Gomes. A prisoner is helpless against official coercion. Gomes was without counsel. He was not warned of his rights, nor told that he need not answer the questions put to him. The examination went far afield from the issues raised by the charge then made against him. His relations with the woman in question had nothing to do with it. To say that the statements so obtained were "voluntary" would be in effect to hold that every statement is voluntary, except where actual force or coercion is used in obtaining it. A statement similarly procured was held inadmissible in Charley Hee v. United States, 19 F.(2d) 335 (C. C. A. 1).

Petition dismissed.