Samuel **KLAPHOLZ** (File No. A6 723 213), Plaintiff,

v.

P. A. **ESPERDY**, as District Director for the New York District, Immigration and Naturalization Service, United States Department of Justice, Defendant.

United States District Court
S. D. New York.
Dec. 30, 1961.

Jackson G. Cook, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for defendant (Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel).

THOMAS F. MURPHY, District Judge.

In this alien's action for a declaratory judgment that he be admitted to the United States as a non-quota immigrant the government, before answer, moves for summary judgment. The principal facts are not in dispute.

Plaintiff, allegedly a native and citizen of Germany and possessed of a valid immigration visa, applied for admission to the United States upon his arrival at New York aboard the S.S. United States on July 30, 1956.[1]

The Immigration Officer, finding plaintiff's name on a "Look Out" Book, telephoned the United States Attorney for the Eastern District of New York and in a short time the plaintiff was taken off the ship by a United States Marshal from the Eastern District of New York and lodged in the Federal House of Detention.[2] It would seem that at that time plaintiff knew there was the possibility of criminal charges being filed against him. He knew, too, that his brother and sister-in-law had been arrested two years before, on August 4, 1954, and that they had been indicted for conspiracy to smuggle diamonds into the United States.

On August 27, 1956, plaintiff was informed by the Immigration and Naturalization Service that he was paroled in the United States by the Service pursuant to § 212(d) (5) of the Immigration and Nationality Act, 8 U.S.C.A. § 1182 (d) (5), "pending completion of primary inspection."

In plaintiff's administrative file there appears the Form 1–122, dated August 2, 1956 (NOTICE TO ALIEN DETAINED FOR HEARING BY SPECIAL INQUIRY OFFICER) and a copy of a letter dated August 3, 1956, to the Warden of the Federal House of Detention requesting that the Form 1–122 be given to plaintiff. Plaintiff, however, claims that he did not receive this form but claims that the first time he received such a form was December 19, 1956.

On October 29, 1956, in the Eastern District of New York, plaintiff pleaded guilty to an information charging him with having violated §§ 2 and 545 of Title 18 U.S.C. in that he knowingly, wilfully and with intent to defraud the United States did cause, command and procure the smuggling and clandestine introduction into the United States at the New York International Airport on August 2, 1954, of certain merchandise which should have been invoiced, to wit, approximately 2149.56 carats of cut, polished diamonds having a domestic value of $243,810, which merchandise was subject to payment of duty of $24,381. On December 17, 1956, he was sentenced to 15 months imprisonment.

On January 23, 1957, at a hearing in exclusion proceedings held at the Federal Correctional Institute at Danbury, Connecticut, the plaintiff was found to be excludable under § 212(a) (9) of the Immigration and Nationality Act (8 U.S. C.A. § 1182(a) (9)) as an alien who had been convicted prior to admission of a crime involving moral turpitude. Thereafter, plaintiff successfully appealed to the Board of Immigration Appeals but the Attorney General, on review of that decision, reinstated the decision of the Special Inquiry Officer denying his admission and excluding him.

A preliminary question must first be resolved. Plaintiff brings this action under the Administrative Procedure Act, 5 U.S.C.A. § 1009. However, the Act of September 26, 1961, 75 Stat. 650, 653, Public Law 87–301, became effective 30 days after its approval and amended 8 U.S.C.A. § 1101 by adding § 1252(b) which provides, "Notwithstanding the provisions of any other law, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 236 of

---

1. He was originally admitted for permanent residence on July 17, 1947. Thereafter he was absent on four occasions, his last departure from the United States being in November, 1950.

2. The record is not clear whether the Marshall had a warrant or not. In any event, plaintiff makes no claim that his arrest was illegal.

**296**

this Act (8 U.S.C. § 1226) or comparable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings and not otherwise."

■ The instant motion for summary judgment was heard prior to the passing and the effective date of the amendment. However, the Act further provides, "Any judicial proceeding to review an order of exclusion which is pending unheard on the effective date of this section shall be expedited in the same manner as is required in habeas corpus." Since there is no difference in the substantive law to be applied to exclusion cases when the declaratory judgment procedure rather than habeas corpus is employed (Brownell v. We Shung, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956)), we will not consider the change in nomenclature.

Plaintiff's first claim is that he was admitted to permanent residence in the United States on July 30, 1956, and therefore he may not be excluded. His argument is that he left the ship in the custody of a Marshal and not an officer of the INS; that he was neither told that his inspection had been deferred or told that he had been paroled, and since he was in possession of a proper immigration visa and all proper papers he was not excludable at that time. In addition, he claims that when the formal notification of August 27, 1956, was given to him that he was paroled into the United States such notification was ineffective since he already had been admitted and jurisdiction in a criminal case had been exercised over him, which would have been improper had he not in fact and in law been admitted. What this boils down to is that if plaintiff was admitted on July 30, 1956, his conviction on a plea of guilty on December 17, 1956, was subsequent to his entry into the United States and, therefore, would not be a ground for excluding him although it might be the ground of subjecting him to deportation.

Basically, plaintiff's argument is that since the Service did not, on shipboard, parole him into the United States and since it did not exclude him it must have admitted him. It is conceded that the Service failed to give plaintiff a Form 1–122 "immediately" as required by the regulations (8 C.F.R. 235.6); but it is equally true that it failed to stamp his visa "Admitted" which is the regulated method of marking visas of persons admitted; these stamped visas are then filed to be a permanent record of admission (8 C.F.R. 235.4 and § 240(a), Act of 1952, 8 U.S.C.A. § 1230(a)); nor was he given Form 1–151 (Alien registration receipt card certifying the time and place of his admission), 8 C.F.R. 264.1(c) (1).

We are satisfied that the regulation 8 C.F.R. 235.6 requiring the examining immigration officer who detains an alien for further inquiry before a Special Inquiry Officer to "immediately sign and deliver to the alien a notice that the alien is being detained for hearing by a Special Inquiry Officer (Form 1–122)," is concerned with the problem of giving an alien adequate notice of why he is detained so that he can prepare to meet the inquiry. Otherwise the concluding sentence of the regulation requiring the notice to be explained through an interpreter, if necessary would have no purpose. Nowhere does plaintiff make any claim that his hearing was unfair or that he had inadequate time to prepare, or that he pleaded guilty under some misapprehension that he would be thereby secure from exclusion.

■ We hold, therefore, that the failure of the examining inspector to give the plaintiff Form 1–122 on board the S.S. United States did not constitute an "admission" of the alien. In United States ex rel. Fink v. Tod, 1 F.2d 246, 256 (2d Cir., 1924), reversed on confession of error, 267 U.S. 571, 45 S.Ct. 227, 69 L. Ed. 793 (1925), the court said: "When an alien arrives and applies for admission to the country, he may be detained and held without warrant until the immigration officials have determined whether he is entitled to admission. Until that question is determined, the immigration authorities need no process to detain the alien in their custody. The original jurisdiction to hold and exclude rests upon the custody of his person acquired at the time of his arrival, *and this original ju-*

*risdiction continues until the question of his right to be admitted has been determined in his favor and the proceedings before the immigration officials may be regarded as closed."* See, too, Patton v. Tod, 297 F. 385, 396 (2d Cir., 1924); United States v. Vasilatos, 209 F.2d 195, 197 (3d Cir., 1954); United States v. Lazarescu, 104 F.Supp. 771 (D.Md., 1952).

■ As to plaintiff's claim that his removal from the ship by the Marshal and the exercise of criminal jurisdiction over him by the government removed him from the jurisdiction for exclusion purposes of the Immigration Service, it is contrary to almost all of the cases that have considered the problem. United States ex rel. Ling Yee Suey v. Spar, 149 F.2d 881 (2d Cir., 1945); United States ex rel. Pantano v. Corsi, 65 F.2d 322 (2d Cir., 1933); Ng Lin Chong v. McGrath, 91 U.S.App.D.C. 131, 202 F.2d 316 (1952); United States ex rel. Camezon v. District Director, 105 F.Supp. 32 (S.D. N.Y., 1952); Gomes v. Tillinghast, 37 F.2d 935 (D.Mass., 1930); United States ex rel. Metassarakis v. Reimer, 8 F.Supp. 82 (S.D.N.Y., 1934).

The only case which suggests that the bringing of an alien into this country by authorities other than the Immigration Service constitutes an entry for exclusion purposes is Blumen v. Haff, 78 F.2d 833 (9th Cir., 1935) cert. denied 296 U.S. 644, 56 S.Ct. 248, 80 L.Ed. 458, which was specifically disapproved in United States ex rel. Bradley v. Watkins, 163 F. 2d 328 (2d Cir., 1947) and impliedly disapproved in United States ex rel. Ling Yee Suey v. Spar, supra.

We learn from these cases that entry means freedom from governmental restraint, not merely going ashore or crossing the border, and that prior and subsequent exercise of criminal jurisdiction over the alien did not prevent his exclusion. Indeed, no case has been found where the exercise of criminal jurisdiction over the alien negated exclusion.

Plaintiff's second claim is that if he was not admitted into the United States it was an abuse of discretion by the Service to parole him into the country under § 212(d) (5). The pertinent statutes are:

"Section 235(b), 8 U.S.C. § 1225 (b) of the Immigration and Nationality Act (66 Stat. 163).

"(b) Every alien (other than an alien crewman), and except as otherwise provided in subsection (c) of this section and in section 273(d), who may not appear to the examining immigration officer at the port of arrival to be clearly and beyond a doubt entitled to land shall be detained for further inquiry to be conducted by a special inquiry officer. The decision of the examining immigration officer, if favorable to the admission of any alien, shall be subject to challenge by any other immigration officer and such challenge shall operate to take the alien, whose privilege to land is so challenged, before a special inquiry officer for further inquiry."

"Section 212(d) (5), 8 U.S.C. § 1182(d) (5), of the Immigration and Nationality Act (66 Stat. 163).

"(5) The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly *in the public interest* any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." [Italics ours].

His argument seems to be that if a person could be eventually determined admissible on facts existing at the time

of arrival, it is unlawful to parole him into the country rather than admit him prior to the determination. In other words, that every determination of admissibility must be made *nunc pro tunc* at the time of arrival.

■ Keeping in mind that the law enforcement authorities of the United States had already arrested and indicted his brother and sister-in-law on a charge of smuggling diamonds into the United States from Germany and that plaintiff was in some way involved, we fail to see how it was arbitrary or an abuse of discretion for the Attorney General to invoke the authority conferred under § 212 (d), (5) and parole the plaintiff "in the public interest," even if the purpose of the Attorney General on behalf of the public was to secure a conviction for diamond smuggling, and based upon such conviction exclude him. The legislative history clearly shows that one of the purposes that Congress envisaged in permitting him to parole aliens into the country "in the public interest" was for the purposes of "prosecution." House Rep.No. 1365, 82d Cong., Second Sess. 57 (1952) accompanying H.R. 5678 (the Immigration and Nationality Act) U.S.Code Congressional and Administrative 1952, p. 1653, 1706, which contained the same language in § 212(d) (5) as was eventually passed, says in part:

"Discretionary authority is vested in the Attorney General in paragraph (5) of section 212(d) to parole into the United States temporarily otherwise inadmissible aliens for emergent reasons or for reasons deemed strictly in the public interest. Such parole shall not be regarded as an admission of the alien, and when the purposes of such parole shall have been served, the alien shall forthwith return or be returned to the custody from which he was paroled and shall continue to be dealt with in the same manner as any other alien applying for admission. The provision in the instant bill represents an acceptance of the recommendation of the Attorney General with reference to this form of discretionary relief. The committee believes that the broader discretionary authority is necessary to permit the Attorney General to parole inadmissible aliens into the United States in emergency cases, such as the case of an alien who requires immediate medical attention before there has been an opportunity for an immigration officer to inspect him, and in cases where it is strictly in the public interest to have an inadmissible alien present in the United States, such as, for instance, a witness or *for purposes of prosecution.*" [Italics ours].

This is not to say that the procedure was in anywise unfair or for the purpose of entrapping the plaintiff. If he was innocent of the charges relating to his 1954 activities then, of course, he would have to be admitted. It appears to us that the Attorney General was merely complying with the direction of Congress that undesirable aliens should not gain admission to the United States, and this certainly was "in the public interest."

The more serious problem appears to be whether an alien may be excluded because a conviction of a crime involving moral turpitude occurs pending the determination of the exclusion proceedings while the alien is on parole. Except for an administrative opinion by the Board of Immigration Appeals, no case has been referred to us nor have we been able to find one where that narrow issue has been determined.

Of the cases cited and those we have been able to find, only Gomes v. Tillinghast, supra, at p. 297, and United States ex rel. Karamian v. Curran, 16 F.2d 958 (2d Cir., 1927) are relevant, but are distinguishable. In Gomes it was held that a guilty plea admitting larceny was the admission of a crime prior to entry and so the alien was excludable, but there the alien had been extradited from Cuba to Massachusetts and deportation proceedings were begun after he served his sentence. In Karamian an alien was held

subject to expulsion when he had been arrested for illegal entry after he crossed the border and was convicted and served his sentence before the proceedings were begun. There is no discussion in the case that exclusion was applicable nor were the grounds for deportation the conviction.

In the Matter of B, 2 IN Dec. 172 (1944) the Board of Immigration Appeals held that an alien could not be excluded for a conviction during parole where he was convicted while his appeal from an incorrect order of exclusion was "pigeonholed" until the conclusion of the criminal case pending against him. In the instant case there was no "pigeonholing" of an appeal from any order, in fact it would appear that the criminal proceedings were conducted expeditiously including, as the administrative file shows, the filing of an information charging a lesser crime on the agreement that the defendant would plead guilty.

The Board of Immigration Appeals in the instant case, when it reversed the order of the Special Inquiry Officer and directed that the plaintiff be admitted, did not rely on its decision in In the Matter of B, supra, but made an independent holding that the determination of admissibility or exclusion must be on facts existing at the time of the alien's application for admission and not on those existing at the time of the hearing.

In this we think they were in error because § 212(d)(5) specifically provides that parole bestows no additional rights on the alien, nor does it in anywise change the alien's status, for it provides, " * * * when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

So here, after the plaintiff's conviction, the deferred examination of him on his application for admission was considered by an Immigration inspector pursuant to § 235(b) (8 U.S.C.A. § 1225(b)), as if plaintiff was still on the vessel when it arrived in New York on July 30, 1956. He held, basing his reason on plaintiff's conviction of a crime involving moral turpitude, that the plaintiff did not appear to him to be clearly and beyond a doubt entitled to land. As a result he was held for further inquiry by a Special Inquiry Officer who conducted the hearing contemplated by § 236 (8 U.S.C.A. § 1226). That officer, considering the fact of conviction while on parole, held he was excludable. If admission or excludability is to be based on facts in existence at the time the alien first arrives it would be contrary to Congressional intent. Since the orderly plan provided by Congress is (1) primary inspection; (2) deferred examination, and (3) parole, this plainly indicates to us that Congress was being doubly sure that § 221(h) (8 U.S.C.A. § 1201(h)) would be honored, for that section provides that nothing in the Act is to be construed to entitle any alien to enter the United States, notwithstanding his possession of appropriate documents if upon arrival he is found to be inadmissible.

The Supreme Court in 1915 held that the Service could not exclude as likely to become a public charge an alien who is headed to an overcrowded labor market in the United States (Gegiow v. Uhl, 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114) and firmly established the rule that an alien may not be excluded where the statute does not provide for it. Since then we have been told that an alien cannot be excluded as likely to become a public charge because of a pending indictment against him (Coykendall v. Skrmetta, 22 F.2d 120 (5th Cir., 1927)) or on the suspicion by the Service that the alien has committed a crime (Howe v. United States, 247 F. 292 (2d Cir., 1917)) or suspicion of immoral purposes upon entry (Tillinghast v. Wong Wing, 22 F.2d 290 (1st Cir., 1928); Wong Gook Chun v. Proctor, 84 F.2d 763 (9th Cir., 1936)). All of these decisions were presumably known to the Congress and could possibly have been the basis of Congress permit-

ting the parole of the alien for purposes of prosecution to the end that no undesirable aliens will be permitted entry. At least it is consistent with the intent of Congress to admit aliens who would be excludable under § 212(a) (6) (8 U.S.C.A. § 1182(a) (6) because of a particular disease or infection if, after parole and treatment on our shores, they are cured. These hardship cases are certainly ones where the facts are developed after the time of the alien's arrival by a sympathetic country that feels that otherwise deserving aliens would be excluded. What is wrong with reserving judgment in the public interest when persons suspected of crimes against our country are paroled for the purposes of prosecution?

That the determination of exclusion was based on plaintiff's conviction while on parole and concededly such fact did not exist on July 30, 1956, the date of his arrival, is not *ipso facto* grounds for compelling admission, nor does Tulsidas v. Insular Collector of Customs, 262 U.S. 258, 43 S.Ct. 586, 67 L.Ed. 969 (1923) relied on by plaintiff, hold otherwise. In Tulsidas the Supreme Court merely decided that one who claimed exemption from exclusion as a "merchant" must have that status "at the time admission is sought, not a status to come, or to be established." (p. 264, 43 S.Ct., p. 588). What few cases there are indicate that it is improper to hold that exclusion must be based only on facts existing at the time of arrival or application for admission. Thus in Masaichi Ono v. Carr, 56 F.2d 772 (9th Cir., 1932) it was held that the admission of perjury was a ground for exclusion. In that case involving an attempted entry on a second reentry permit the admission was to perjury made in the administrative hearings on a prior attempt to enter. In Kaneda v. United States, 278 F. 694 (9th Cir., 1922) an admission of perjury during an exclusion hearing was held to be grounds for exclusion. Concededly, those cases did not concern the immediate problem but, in our opinion, they point in the right direction. Cf. Rosen v. Williams, 200 F. 538 (2d Cir., 1912).

Accordingly, we hold that the conviction of the plaintiff while on parole was a proper ground for excluding him.

Plaintiff's last claim is that it was an abuse of administrative discretion on the part of the Attorney General to review a decision by the Board of Immigration Appeals. His argument seems to be that the Attorney General, having delivered to the Board the power to make decisions, he may not review them and, alternatively, that the availability of review by the Attorney General is so one-sided as to be fundamentally unfair to an alien.

Plaintiff does not deny that the Attorney General can delegate his authority (Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956)), but rather that once having delegated it he has abrogated all control. We reject this argument as being without substance. (8 U.S.C.A. § 1103(a)).

Accepting the premise of plaintiff's alternate argument that he had no opportunity to present a brief before the Attorney General, it would appear that his present court review satisfies any question of due process, assuming due process is required. Nani v. Brownell, 101 U.S. App.D.C. 112, 247 F.2d 103 (1957) cert. denied 355 U.S. 870, 78 S.Ct. 119, 2 L.Ed.2d 75.

Plaintiff's last claim is that defendant abused his administrative discretion and acted arbitrarily and capriciously in denying his application for a waiver of excludability under (8 U.S.C.A. § 1182(g)). Since the Board of Immigration Appeals based its denial on discretion alone, although the Special Inquiry Officer based his decision on the ground that plaintiff's admission would be contrary to the "national welfare, safety, or security of the United States" (8 U.S. C.A. § 1182(g)), we need not consider the decision of the Special Inquiry Officer but limit ourselves to the question whether we can review the exercise of discretion. We are told in United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 490 (2d Cir., 1950) that we could not review the exercise of discretion, at least in the absence of a reason given by the

agency that it is so "clearly irrelevant" that the statute's implied limitations have been transgressed. "Unless the ground stated is on its face insufficient, he (the alien) must accept the decision, for it was made in the 'exercise of discretion,' which we have again and again declared that we will not review." Cf. Jimenez v. Barber, 235 F.2d 922 (9th Cir., 1956) cert. denied 355 U.S. 903, 78 S.Ct. 327, 2 L.Ed.2d 259 (1957); MacKay v. McAlexander, 268 F.2d 35, 40 (9th Cir., 1959) cert. denied 362 U.S. 961, 80 S.Ct. 875, 4 L.Ed.2d 876 (1960); Moutsos v. Shaughnessy, 149 F.Supp. 116 (S.D.N.Y., 1957).

Defendant's motion for summary judgment is granted and the complaint is dismissed.

This is an order. No settlement is necessary.