Giuseppe **VITALE**, Plaintiff-Appellant,

v.

**IMMIGRATION & NATURALIZATION SERVICE,**
Defendant-Appellee.

No. 72–1105.

United States Court of Appeals, Seventh Circuit.

Argued April 5, 1972.

Decided June 13, 1972.

**580**

Ralph M. Schelly, Jose R. Vazquez, Chicago, Ill., for plaintiff-appellant.

James R. Thompson, U. S. Atty., Sheldon R. Waxman, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for defendant-appellee.

Before PELL, STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This is an appeal by the plaintiff, Giuseppe Vitale, from a district court order granting the motion of defendant, the Immigration & Naturalization Service, for summary judgment. The order affirmed the decision of the Board of Immigration Appeals ordering the plaintiff excluded and deported from the United States.

■ Giuseppe Vitale was deported from the United States on September 21, 1970. Aliens who have been deported are excluded from admission into the United States and are ineligible for visas prior to their embarkation at a place outside the United States, unless the Attorney General has consented to their applying for admission. 8 U.S.C. § 1182(a) (17). Without receiving or seeking consent, Vitale obtained a non-immigrant visa from the American Consul in Palermo, Italy, for entry into the United States as a visitor. Since Vitale denied, in the hearing before the special inquiry officer, that he had previously been deported, it is reasonable to assume that he also denied his deportation in his application for a visa. Moreover, the issuance of a visa does not entitle an alien to enter the United States if, upon arrival at a port of entry, he is found to be inadmissible. This warning appears upon every visa application. 8 U.S.C. § 1201(h).

On March 2, 1971, Vitale arrived at O'Hare Airport, Chicago, Illinois, via Alitalia Airlines with his wife and their two-year-old son. He was informed that he was ineligible to enter because of his previous deportation. Inspection was deferred and Vitale and his wife were instructed to report to the Immigration Office in downtown Chicago on the following morning. Alitalia Airlines was served pursuant to 8 C.F.R. § 235.3(b) with Form I–259 ("Notice to Detain, Deport, Remove or Present Aliens") to present Vitale and his wife at the Immigration Office on that morning. Vitale's passport was not returned to him and it was not stamped "Admitted" as required by 8 C.F.R. § 235.4 as a condition of admission.

Vitale failed to appear on March 3 but instead presented himself on March 10, 1971. In the interim, he stayed at several hotels. Inspection was completed on March 10, at which time Vitale was served pursuant to 8 C.F.R. § 235.6(a) with Form I–122 ("Notice to Applicant For Admission Detained for Hearing Before Special Inquiry Officer") for an exclusion hearing that day before a special inquiry officer. He was represented by counsel at the hearing.

Vitale testified that on March 2 he was informed that he could not enter the United States because he had been deported; that his passport had been taken from him; that he was told by "the

Alitalia people" that he had to present himself in the morning at the Immigration Office; and that his intention in coming to the United States was to reside and work here permanently and not to enter as a visitor.

The special hearing officer rendered his decision on March 19, 1971, ordering Vitale excluded and deported (1) because of his prior deportation and failure to obtain the Attorney General's consent to be readmitted under 8 U.S.C. § 1182(a) (17), and (2) because of his failure to establish that he was a bona fide nonimmigrant and his failure to have an immigrant visa under 8 U.S.C. § 1182(a) (20).

Upon Vitale's appeal from the special inquiry officer's decision, the Board of Immigration Appeals dismissed the appeal on June 18, 1971, and denied Vitale's motion for reconsideration on October 12, 1971.

On February 1, 1972, the district court entered its findings of fact and conclusions of law, affirming the decision of the Board of Immigration Appeals and ordering the plaintiff to be excluded and deported from the United States. On appeal, we affirm.

Vitale has argued that, although the Attorney General may parole any alien into the United States temporarily under such conditions as he may prescribe (8 U.S.C. § 1182(d) (5)), and although such a paroled alien is not deemed admitted, Vitale was not "paroled." Thus he "entered" the country and was entitled to a deportation hearing under 8 U. S.C. § 1252(b). He further argued that, in a deportation hearing as distinguished from an exclusion hearing, he would be entitled to greater rights than he was accorded in the March 10 proceeding.

The Board of Immigration Appeals "found ample evidence in the record that the applicant had been enlarged on parole." The district court found that "the plaintiff was temporarily paroled into this country solely for the purpose of an exclusion hearing."

In Klapholz v. Esperdy, 201 F.Supp. 294 (S.D.N.Y.1961), the alien applied for admission on shipboard on July 30, 1956, and was served with Form I–122 on August 2, 1956. The court, in confirming his exclusion, said (201 F.Supp. at 296):

"Basically, plaintiff's argument is that since the Service did not, on shipboard, parole him into the United States and since it did not exclude him it must have admitted him. It is conceded that the Service failed to give plaintiff a Form 1–122 'immediately' as required by the regulations (8 C.F.R. 235.6); but it is equally true that it failed to stamp his visa 'Admitted' which is the regulated method of marking visas of persons admitted; these stamped visas are then filed to be a permanent record of admission (8 C.F.R. 235.4 and § 240(a), Act of 1952, 8 U.S.C.A. § 1230(a)); nor was he given Form 1–151 (Alien registration receipt card certifying the time and place of his admission), 8 C.F.R. 264.1(c) (1).

"We are satisfied that the regulation 8 C.F.R. 235.6 requiring the examining immigration officer who detains an alien for further inquiry before a Special Inquiry Officer to 'immediately sign and deliver to the alien a notice that the alien is being detained for hearing by a Special Inquiry Officer (Form 1–122),' is concerned with the problem of giving an alien adequate notice of why he is detained so that he can prepare to meet the inquiry. . . .

"We hold, therefore, that the failure of the examining inspector to give the plaintiff Form 1–122 on board the S. S. United States did not constitute an 'admission' of the alien."

In that case, the alien was not formally paroled until August 27, 1956.

Vitale has argued that his failure to appear until March 10 constituted such freedom from restraint that he accomplished an entry. In *Klapholz*, the alien made a similar argument, contending

that his detention by a United States marshal prior to formal notification of parole constituted freedom from restraint or from detention by an immigration officer and hence was equivalent to an entry.

The court of appeals affirmed the district court's rejection of Klapholz's contention at 302 F.2d 928, 929 (2d Cir.), cert. denied, 371 U.S. 891, 83 S.Ct. 183, 9 L.Ed.2d 124 (1962):

"For the reasons stated by the court below, we agree that Klapholz's parole into the United States was a proper exercise of authority granted by Section 212(d) (5) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d) (5); that Klapholz's detention by non-immigration officers did not constitute an admission, 'de facto' or otherwise; and that the failure to present him with a form notice of hearing until he was being detained on criminal charges is immaterial in the absence of any allegation that the hearing was thereby rendered unfair."

In other words, the failure to admit Klapholz had the effect of paroling him, although he was not formally paroled and although he was not in the custody of the Immigration Service.

The agent for Alitalia Airlines was served with Form I–259 under 8 C.F.R. § 235.3(b), which provides, "If in the opinion of the examining immigration officer it is not practical to resolve a question of admissibility at the time of arrival of a passenger on . . . [an] aircraft, the officer shall execute Form I–259 to notify the agent for the . . . aircraft . . . that the passenger is to be presented for further inspection." Section 235.3(b) further provides that "the transportation company *shall remain under the obligation* . . . to prevent an unauthorized landing, unless the transportation company has been relieved of such obligation. . . ."

From March 3 to March 10, Vitale was committed to the custody of Alitalia Airlines. As Mr. Justice Holmes said in Kaplan v. Tod, 267 U.S. 228, 230, 45 S.

Ct. 257, 69 L.Ed. 585 (1925), where the alien had been committed to the custody of a private charity, "She was still in theory of law at the boundary line and had gained no foothold in the United States." The Supreme Court observed in Leng May Ma v. Barber, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958), "Physical detention of aliens is now the exception, not the rule, and is generally employed only as to security risks or those likely to abscond. . . . Certainly this policy reflects the humane qualities of an enlightened civilization."

■ The placing of Vitale in the custody of Alitalia Airlines constituted parole; he did not effect an entry into the United States.

Vitale has cited United States ex rel. Lam Fo Sang v. Esperdy, 210 F.Supp. 786 (S.D.N.Y.1962), where the alien was allowed to land at the New York airport as a TRWOV (Transit Without Visa). He left the airport, obtained employment as a waiter in a Chinese restaurant and was apprehended by the Immigration Service two and a half months later. The district court held that he was entitled to a deportation hearing.

In this case, Vitale had been notified to appear for a hearing, his passport had been withheld and he had been committed to the custody of Alitalia Airlines. He actually presented himself at the Immigration Service office, although one week late. He testified that "up to then I didn't get in touch with any lawyers." Since he appeared with a lawyer, his delay in appearing seems to have been for the purpose of obtaining a lawyer for the hearing.

■ Even if we should assume that orally directing Vitale to present himself for hearing, withholding his passport and placing him in the custody of Alitalia Airlines did not constitute "parole" within the meaning of the statute, nevertheless 8 U.S.C. § 1252(f) provides that, if an alien has unlawfully re-entered the United States after having been deported, "the previous order of de-

portation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry."

The hearing held by the special inquiry officer in Vitale's case satisfied the due-process requirements of a hearing under section 1252(f).[1]

Affirmed.

---

1. "In determining the deportability of an alien alleged to be [under section 1252 (f)], the issue shall be limited solely to a determination of the identity of the respondent, *i. e.*, whether the respondent is in fact an alien who was previously deported . . . ; and whether respondent has unlawfully reentered the United States." 8 C.F.R. § 242.23(c).