## MATTER OF CONCEIRO

### In Exclusion Proceedings

### A-20079513

*Decided by Board February 12, 1973*

The Board of Immigration Appeals lacks authority to direct an alien's enlargement on parole under section 212(d)(5) of the Immigration and Nationality Act.*

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no immigrant visa.

ON BEHALF OF APPLICANT:
Maurice A. Reichman, Esquire
663 Fifth Avenue
New York, New York 10022
(Brief filed)

ON BEHALF OF SERVICE:
David L. Milhollan
Appellate Trial Attorney

This is an appeal from an order of a special inquiry officer excluding the applicant from admission to the United States. The applicant's inadmissibility is conceded. The only issue raised is whether this Board has power to direct his enlargement on parole under section 212(d)(5) of the Immigration and Nationality Act, as counsel requests. We hold we lack that power. The appeal will be dismissed.

The facts are not in dispute. The applicant is a 39-year old married male alien, a native and citizen of Cuba. He sought to leave Cuba in 1969 and on February 19, 1970, he received a Cuban passport valid for five years. He intended ultimately to come to the United States, where his mother and one sister were permanent residents and another sister was a parolee.[1] Unable to qualify for a

---

[1] 1 Gordon and Rosenfield, *Immigration Law and Procedure*, § 6.7a, p. 6–37 (1972 Cum. Supp.): "... A recent problem has been presented by the flight of many Cubans from the Castro government. About 250,000 of these had reached the United States by June 30, 1965. Moreover, in 1965 the United States undertook to receive large numbers of additional refugees from Cuba. Such Cuban refugees are admitted to the United States either as immigrants or under a waiver of their nonimmigrant documentary requirements or under extended parole ..." (Footnotes omitted).

* Affirmed: 360 F. Supp. 454 (S.D.N.Y., 1973).

visa for entry into the United States, he obtained successive visas to enter Spain for ninety-day periods, but was denied permission to leave Cuba until he had fulfilled a government imposed obligation to perform labor in the fields. He was finally permitted to depart for Spain on January 27, 1972, leaving behind in Cuba his wife and their child, now three years old. Following arrival in Spain, he received successive extensions of his permission to remain there temporarily, the most recent on November 11, 1972. Receiving word that his mother was seriously ill in New York, with the assistance of an Italian national he made his way to Italy and obtained passage on a flight from Rome to New York, arriving December 17, 1972, when he applied for admission as a visitor. Because of doubt as to his admissibility, he was detained for a hearing before a special inquiry officer. His mother had just died and he was permitted to attend her funeral under safeguards.

After a hearing at which the applicant conceded he wishes to remain here as a refugee indefinitely, the special inquiry officer concluded that he is ineligible for a waiver of nonimmigrant visa and that he is inadmissible as a visaless immigrant. It was brought out that the District Director, after consultation with the State Department's Office of Refugee and Migration Affairs, had refused to enlarge the applicant into the United States on parole as a refugee. The applicant was offered and declined an opportunity to withdraw his application for admission. The special inquiry officer ordered his exclusion and deportation and this appeal followed.

On appeal, counsel concedes that the applicant is ineligible for a visa waiver and is inadmissible. However, relying on this Board's decision in *Matter of R—*, 3 I. & N. Dec. 45 (BIA, 1947), he asserts that we have power to enlarge the applicant on parole and he asks that we do so. We conclude that we lack that power.

Prior to the Immigration and Nationality Act of 1952, inadmissible aliens were sometimes enlarged into the United States on parole temporarily for humanitarian reasons. Parole was then an administrative expedient, fashioned out of necessity and without statutory sanction. As we pointed out in *Matter of R—*, *supra*, parole was a useful device of long standing serving many purposes and we saw no reason why it should not be available to us as well as to the Service.

Parole first received statutory sanction in section 212(d)(5) of the 1952 Act, which provides as follows:

The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be

regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

In the regulations which went into effect with the 1952 Act, the Attorney General specifically delegated the parole power to the Service's District Directors and officers in charge of ports of entry.[2] Under the current regulation, 8 CFR 212.5(a), it is only the District Directors who are specifically authorized to wield this power:

The district director in charge of a port of entry may, prior to examination by an immigration officer, or subsequent to such examination and pending a final determination of admissibility in accordance with sections 235 and 236 of the Act and this chapter, or after a finding of inadmissibility has been made, parole into the United States temporarily in accordance with section 212(d)(5) of the Act any alien applicant for admission at such port of entry under such terms and conditions, including the exaction of a bond on Form I-352, as such officer shall deem appropriate. At the expiration of the period of time or upon accomplishment of the purpose for which parole was authorized or when in the opinion of the district director in charge of the area in which the alien is located that neither emergency nor public interest warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he shall be restored to the status which he had at the time of parole, and further inspection or hearing shall be conducted under section 235 or 236 of the Act and this chapter, or any order of exclusion and deportation previously entered shall be executed. If the exclusion order cannot be executed by deportation within a reasonable time, the alien shall again be released on parole unless in the opinion of the district director the public interest requires that the alien be continued in custody.

The Attorney General has never specifically delegated to this Board direct authority to exercise his parole power. Neither has he included within our appellate jurisdiction under 8 CFR 3.1(b) authority to review a District Director's parole determination in exclusion proceedings. In expulsion proceedings against aliens already within the United States, on the other hand, our appellate jurisdiction to review parole determinations is clearly spelled out. See 8 CFR 3.1(b)(7); 8 CFR 242.2(a), (b); *Matter of Kwun*, 13 I. & N. Dec. 457 (BIA, 1969, 1970). We have consistently taken the position that the parole power under section 212(d)(5) of the Act is not within the scope of our authority.

Counsel points, however, to the generous quality of the general authority conferred by the Attorney General on the Board in 8 CFR 3.1(d)(1):

(d) *Powers of the Board.* (1) *Generally.* Subject to any specific limitation prescribed by this chapter, in considering and determining cases before it as

---

[2] See 8 CFR 212.9, 17 F.R. 11486 (December 19, 1952).

provided in this part the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case.

He contends that the regulation delegating parole authority to District Directors, 8 CFR 212.5, *supra*, does not in terms refer to the powers of this Board or make the District Director's delegated power exclusive.[3] He argues that the regulation contains no "specific limitation" on the authority of this Board within the meaning of 8 CFR 3.1(d)(1) and that this Board therefore retains the Attorney General's parole power. He points out that the text of 8 CFR 3.1(d)(1) is substantially the same today as its predecessor in effect when we decided *Matter of R—*, *supra*.[4] If we had parole jurisdiction under our general grant of the Attorney General's powers at that time, he argues, we retain that jurisdiction now under the current counterpart of that grant.

Despite the beguiling simplicity of this thesis, we are satisfied that it is untenable. In 1947 when we asserted our authority to grant parole in *Matter of R—*, *supra*, the parole power was unauthorized by statute and there were no regulations defining its grant. We felt we had as much right as the Service to make use of this useful administrative device. The 1952 Act changed all that. Not only did it define and delimit the parole power, but the Attorney General's implementing regulations specifically delegated the power in terms to Service personnel in charge of ports of entry. We regard this as a specific limitation on the Board's hitherto asserted power to grant parole by virtue of the general authority it had received from the Attorney General. When in 1954 it was concluded that this Board should have jurisdiction to review detention, bond, and parole determinations made by the Service in expulsion proceedings, the implementation of our jurisdiction in this regard was accomplished by specific regulation. See *Matter of Kwun, supra*. Had it been thought that the Attorney General's grant of general authority to the Board was broad enough to cover such determinations of the Service, there would have been no need for further regulations on the subject.

Moreover, in the nature of things it is singularly appropriate that the parole power in exclusion proceedings be exercised by Service personnel at the field office level and not by this Board. As a quasi-judicial appellate tribunal, we make our determinations on appeal solely on the basis of the administrative record made in the Service proceedings. We are ill-equipped to make the inquiries and

---

[3] Compare 8 CFR 243.4 and 8 CFR 244.2, giving the District Director "sole jurisdiction" of certain determinations and specifically barring appeals therefrom.

[4] See 8 CFR 90.3(c), 1949 Rev.

to conduct the investigations needed to make the summary decisions relating to the parole of recently arrived aliens. The problems presented in making those decisions are not legal problems but are essentially discretionary in nature, frequently involving rapidly changing considerations of foreign policy. The Service's field officers on the scene are in the best position to make such determinations. They have the arriving alien in custody and are better able to assess the emergency which is cited as the basis for enlargement of the alien on parole. They have investigative facilities and open lines of direct communication with the State Department and other agencies involved in formulating policies affecting our foreign relations.[5] We have no such facilities and as a quasi-judicial tribunal it is undesirable that we embark on such inquiries of an investigative nature.

We conclude that the Attorney General has not delegated to us, directly or by implication, his parole authority under section 212(d)(5) of the Act. We have no alternative but to deny the request for parole. If it should turn out that the exclusion order cannot be executed by deportation within a reasonable time, a further application for parole can be made under 8 CFR 212.5(a) to the District Director.

**ORDER:** The appeal is dismissed.

---

[5] The Service procedures in considering asylum requests by arriving refugees are described in 1 Gordon and Rosenfield, *Immigration Law and Procedure*, § 3.17e (1972).