# Matter of Jaime Enrique VALENZUELA-FELIX, Respondent

*Decided November 16, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

When the Department of Homeland Security paroles a returning lawful permanent resident for prosecution, it need not have all the evidence to sustain its burden of proving that the alien is an applicant for admission but may ordinarily rely on the results of a subsequent prosecution to meet that burden in later removal proceedings.

FOR RESPONDENT: Geoffrey A. Hoffman, Esquire, Houston, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: James Lazarus, Associate Legal Advisor

BEFORE: Board Panel: PAULEY and WENDTLAND, Board Members. Concurring and Dissenting Opinion: COLE, Board Member.

PAULEY, Board Member:

In a decision dated July 13, 2011, an Immigration Judge terminated the removal proceedings against the respondent. The Department of Homeland Security ("DHS") has timely appealed from that decision. The respondent opposes the DHS appeal. The appeal will be sustained, the removal proceedings will be reinstated, and the record will be remanded to the Immigration Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States. In June 2009 he was indicted by a grand jury on charges including bulk cash smuggling in violation of 31 U.S.C. § 5332 (2006). In August 2009, upon returning from a trip abroad, the respondent was paroled into the United States for prosecution. On July 8, 2010, he was convicted of that offense in the United States District Court for the Central District of California and was sentenced to 27 months' imprisonment.

On May 23, 2011, the DHS served the respondent with a notice to appear, charging that he is inadmissible under section 212(a)(2)(A)(i)(I) of the

Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006), as an alien who has been convicted of a crime involving moral turpitude. On July 11, 2011, the DHS lodged an additional charge that the respondent is inadmissible under section 212(a)(2)(A)(i)(II) of the Act as an alien convicted of a controlled substance violation, based on his July 8, 1991, conviction for possession for sale of cocaine in California.

The Immigration Judge found that "the proper time for the government to make its determination as to whether the Respondent was an arriving alien was at the time he sought entry into the United States." In this regard the Immigration Judge noted that the respondent had not then been convicted and that the DHS had, at most, probable cause from an outstanding arrest warrant that he had committed a crime involving moral turpitude based on cash smuggling. Since the DHS was likewise unaware of the respondent's 1991 drug conviction at that time, the Immigration Judge concluded that it did not establish by clear and convincing evidence that the lawful permanent resident respondent was seeking admission. He therefore ordered that the proceedings be terminated.

## II. ISSUE

As the Immigration Judge properly determined, we held in *Matter of Rivens*, 25 I&N Dec. 623 (BIA 2011), that the DHS bears the burden of proof by clear and convincing evidence that a returning lawful permanent resident falls within one or more of the six enumerated provisions in section 101(a)(13)(C) of the Act, 8 U.S.C. § 1101(a)(13)(C) (2006), and is therefore to be regarded as seeking admission into the United States. One of those provisions is that the alien "has committed an offense identified in section 212(a)(2)." Section 101(a)(13)(C)(v) of the Act. However, we did not then have occasion to address the issue which is dispositive in this case, namely, the *time* at which the determination must be made by clear and convincing evidence that the alien has committed a section 212(a)(2) offense. We will address that issue now.[1]

## III. ANALYSIS

On appeal, the DHS argues that the Immigration Judge erred both in finding that it failed to meet the burden required in *Matter of Rivens* to show that the respondent was an arriving alien under section 101(a)(13)(C)(v) of the

---

[1] Pursuant to the Supreme Court's intervening decision in *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), we will not address the respondent's 1991 drug conviction. See *infra* note 6.

Act and in his application of *Matter of Collado*, 21 I&N Dec. 1061 (BIA 1998). The DHS essentially contends that because the respondent was paroled for purposes of prosecution, it could rely on the subsequent fact of his conviction since he was not admitted prior thereto. Upon our de novo review, we agree with the DHS. 8 C.F.R. § 1003.1(d)(3)(ii) (2012). We conclude that under these circumstances, the DHS could rely on the respondent's subsequent conviction to sustain its burden of proving that he was properly charged as an arriving alien who is inadmissible under section 212(a)(2)(A)(i)(I) of the Act.

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), Congress amended section 101(a)(13) of the Act to replace the previous definition of the term "entry" with a new definition of an "admission." Section 101(a)(13)(A) of the Act provides that "the terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." However, section 101(a)(13)(C) provides that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws unless the alien" falls into one of six categories. One of these is where the alien "has committed an offense identified in section 212(a)(2), unless since such offense the alien has been granted relief under section 212(h) or 240A(a)." Section 101(a)(13)(C)(v) of the Act. Section 212(a)(2)(A)(i)(I) includes "a crime involving moral turpitude."

Under section 212(d)(5) of the Act, an alien applying for admission to the United States may be paroled temporarily into the country on a case-by-case basis. The statute specifically states that the "parole . . . shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served," the alien is to be returned to the custody from which he was paroled "and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Section 212(d)(5)(A) of the Act.

To resolve the matter before us, we must address the interplay of these two seemingly contradictory statutes—section 101(a)(13)(C) of the Act, which states that returning lawful permanent residents are presumptively not to be treated as arriving aliens, and section 212(d)(5), which allows the DHS to temporarily parole aliens seeking admission in order to determine admissibility at a later date, with no explicit exemption for returning lawful permanent residents. As we will explain further, the interplay, in fact, presents no actual conflict, since determinations under each of these statutes are made at different times in the immigration process, and the authority to parole for purposes of prosecution is not limited to applicants for admission. Ultimately, the resolution of this case turns on an issue of timing.

We disagree with the Immigration Judge's assessment that "the most logical construction of section 101(a)(13)(C) is that Congress intended for the Government to make its determination of whether a returning lawful permanent resident is seeking admission at the time the lawful permanent resident presents himself at the port of entry for re-entry into the United States." As discussed below, the Attorney General and this Board have consistently treated an application for admission as a continuing one and have held that, ultimately, admissibility is authoritatively determined on the basis of the law and facts existing, not at the time the alien first presents himself at the port of entry, but at the time the application for admission is finally considered during the proceedings before the Immigration Judge—including in the specific context of parole for purposes of prosecution. At least in *that* context, the only one now before us, we can discern no indication that in enacting section 101(a)(13)(C) of the Act, Congress intended to depart from longstanding precedent that had established the timing of the inadmissibility inquiry by focusing on the circumstances existing at the time of the ultimate hearing before the Immigration Judge.[2]

We begin by discussing the history and nature of parole for purposes of prosecution. Pertinent administrative precedent recognizes that the legislative history of the parole provision at section 212(d)(5) shows that one of Congress' primary purposes was to allow parole for the purpose of prosecution. *See Matter of K-*, 9 I&N Dec. 143, 157 (BIA 1959; A.G. 1961), *complaint dismissed sub nom. Klapholz v. Esperdy*, 201 F. Supp. 294 (S.D.N.Y. 1961), *aff'd per curiam*, 302 F.2d 928 (2d Cir. 1962) (involving a lawful permanent resident). Such precedent has also rejected the contention that only an applicant for admission can be paroled.[3] *See Matter of Badalamenti*, 19 I&N Dec. 623, 626 (BIA 1988) (stating that an alien who is extradited to the United States and paroled for the purpose of prosecution does

---

[2] We do not mean to hold that when immigration officers are presented with clear and convincing evidence at the border that a returning lawful permanent resident falls into one or more of the six provisions in section 101(a)(13)(C), they may not regard the alien as an applicant for admission until a final determination is made in the context of removal proceedings. *See Gonzaga-Ortega v. Holder*, 694 F.3d 1069 (9th Cir. 2012) (holding that a returning lawful permanent resident caught attempting to smuggle his niece across the border could be denied admission). However, we disagree with the Immigration Judge that the determination whether one of the provisions in section 101(a)(13)(C) applies *must* always occur at the border, so that when such clear and convincing evidence does not then exist, a returning lawful permanent resident must be admitted, rather than paroled for purposes of prosecution.

[3] In essence, the case law indicates that although section 212(d)(5) states that an applicant for admission may be paroled, it was not intended to restrict parole authority to such applicants, as the concurring and dissenting opinion implicitly contends.

not automatically become an applicant for admission upon termination of parole); *see also Matter of Accardi*, 14 I&N Dec. 367 (BIA 1973).

When the respondent attempted to return to the United States in 2009, he was paroled into the country for purposes of criminal prosecution. Under the explicit terms of section 212(d)(5), that grant of parole did not in and of itself admit the respondent to the United States. As a general matter, the DHS has the authority to delay the initiation of proceedings until after the resolution of an arriving alien's criminal charges.[4] *See Matter of Bahta*, 22 I&N Dec. 1381, 1391-92 (BIA 2000) (stating that the determination whether and when to place an alien in removal proceedings is a matter of prosecutorial discretion entirely within the authority of the DHS). Following any resolution of the criminal proceedings by the entry of a criminal conviction, the purposes of the parole have been served, and the DHS generally has prosecutorial discretion to charge the alien with inadmissibility on the basis of the postarrival conviction (for prearrival conduct) if the conviction is, in fact, covered by an inadmissibility ground under section 212(a)(2) of the Act.[5] The question thus becomes whether this analysis pertains in a case arising after the IIRIRA where the alien paroled for prosecution is a returning lawful permanent resident. We conclude that it does.

We recognize that the statute as amended by the IIRIRA exempts a returning lawful permanent resident from being regarded as an applicant for admission in the context of removal proceedings—and instead treats him as having been previously admitted—unless the DHS demonstrates by clear and convincing evidence that he comes within one or more of the new criteria specified in section 101(a)(13)(C). *See Matter of Rivens*, 25 I&N Dec. 623. But that provision does not purport to change the *timing* of the resolution of issues relating to a lawful permanent resident's susceptibility to inadmissibility charges by requiring the DHS to be able to meet its burden as early as the time of the alien's inspection and examination, *prior* to the initiation of removal proceedings. Likewise, the statute does not purport to restrict the DHS's law enforcement authority to parole a returning lawful permanent resident until pending criminal charges potentially giving rise to inadmissibility can be resolved. Nor does it prevent the DHS from treating a returning resident as an arriving alien until an ultimate determination is made

---

[4] An "arriving alien" is defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q) (2012). The regulations also provide that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." *Id.*

[5] Pursuant to section 212(d)(5) of the Act, the purposes of parole for prosecution are not served until the criminal charges are resolved. *Matter of Badalamenti*, 19 I&N Dec. 623.

by an Immigration Judge, in any removal proceedings the DHS may initiate, whether one or more of the section 101(a)(13)(C) criteria, in fact, pertain.

In *Matter of Collado*, 21 I&N Dec. at 1064, we stated that "it would be inconsistent with the definitional nature of [section 101(a)(13)(C)] to read it . . . to create either a third category or an undefined second category of lawful permanent residents who may or may not be regarded as seeking an admission, depending on a wholly unspecified set of criteria that, presumably, would be developed by case-by-case adjudication." Relying on that language, the Immigration Judge in this case concluded—and our concurring and dissenting colleague apparently agrees—that by using parole to delay the analysis, the DHS would be creating a third category of lawful permanent residents and that such an approach would defeat the purpose of the statute and "keep some returning lawful permanent residents in a state of limbo as to whether they are seeking admission (and are thus arriving aliens) for an indeterminate amount of time." We disagree.

The underlying issue in *Matter of Collado* turned on whether the alien was seeking admission under section 101(a)(13)(C) or, alternatively, was immune from an inadmissibility charge under the doctrine set forth by the Supreme Court in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963) ("*Fleuti* doctrine"). Neither the respondent nor the DHS argues that the *Fleuti* doctrine is applicable to this case as regards the respondent's alleged conviction for a crime involving moral turpitude.[6] As discussed above, section 212(d)(5) permits parole for the purpose of prosecution, and we cannot conclude that the grant of parole to an alien with pending criminal charges would "create either a third category or an undefined second category of lawful permanent residents who may or may not be regarded as seeking an admission, depending on a wholly unspecified set of criteria." *Matter of Collado*, 21 I&N Dec. at 1064. When the purposes of the parole are completed, the application of section 101(a)(13)(C) is

---

[6] We observe that the Supreme Court issued *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), subsequent to the Immigration Judge's decision in this case. The Supreme Court applied the "antiretroactivity principle" there to hold that a returning lawful permanent resident could not be regarded as seeking admission under section 101(a)(13) of the Act where his conviction for an offense under section 212(a)(2) predated the effective date of the IIRIRA. *Id.* at 1487-92. Rather, the Supreme Court required an evaluation of the alien's application for admission under the *Fleuti* doctrine, pursuant to which a lawful permanent resident could make brief, casual, and innocent departures outside the United States without being classified as an alien seeking entry upon return. While the respondent argues that this case would apply to his 1991 conviction for possession of cocaine—an issue we do not decide— he does not claim that it would apply to his 2010 bulk cash smuggling conviction, which obviously postdates the effective date of the IIRIRA.

straightforward. In this case, such an approach is consistent with Congress' intent to allow parole for the purpose of prosecution.

Nothing in section 101(a)(13)(C) suggests that Congress wanted to eliminate the DHS's longstanding authority to parole a lawful permanent resident into the United States for prosecution. Indeed, this is a sensible practice because it allows an adjudication in the criminal justice system to precede immigration proceedings, so if there is no conviction, any immigration consequences would be unlikely.

In any event, the Immigration Judge's attempt to decide the admissibility issue at the time the respondent was initially stopped at the border is at odds with the well-established immigration practice that treats an application for admission as a continuing one. The DHS should not be required to prove its case based on the information it had in August 2009. It would be ill-advised to turn admissibility questions into retrospective inquiries when the pertinent ground does not expressly call for such, and we decline to do so here. We cannot agree with the respondent's view of this case, which the concurring and dissenting opinion apparently shares. That view would effectively eliminate the DHS's ability to parole a lawful permanent resident for prosecution and thus is contrary to longstanding administrative precedent.

Specifically, our interpretation of the interplay of the parole authority of the DHS and the special status of returning lawful permanent residents is strongly supported by the Attorney General's precedential decision in *Matter of K-*, 9 I&N Dec. at 154-58. In that case, which presented a similar situation, immigration authorities paroled a returning lawful permanent resident into the United States upon learning at the port of entry that he was implicated in large-scale diamond smuggling activities, which could constitute a crime involving moral turpitude. The alien was subsequently prosecuted and convicted, and he was then ordered excluded in exclusion proceedings. Like the Immigration Judge here, we had found that the eligibility of a returning lawful permanent resident alien must be determined as of the time of the initial application for admission, that is, at the border, and that the results of any subsequent conviction while on parole did not affect the alien's eligibility for admission.

The Attorney General reversed the Board's decision and held that it was proper for immigration authorities to parole the returning lawful permanent resident for prosecution based on evidence that he had already committed a crime involving moral turpitude at the time he sought to be admitted at the border and to then make the ultimate determination regarding the alien's admissibility in a postconviction exclusion proceeding. Subsequent Board decisions have cited *Matter of K-* for the proposition that an application for admission is a continuing one and that admissibility is determined on the basis

of the law and facts existing at the time the application is finally considered. *See, e.g.*, *Matter of Kazemi*, 19 I&N Dec. 49, 51 (BIA 1984).

To be sure, this country's immigration laws relating to returning lawful permanent residents have changed since the time of the Attorney General's 1961 decision. For example, in 1963 the Supreme Court determined in *Rosenberg v. Fleuti* that an "innocent, casual, and brief excursion" by a resident alien outside this country's borders would not subject him to the consequences of an "entry" on his return. 374 U.S. 449. However, in *Matter of Alvarez-Verduzco*, 11 I&N Dec. 625 (BIA 1966), we distinguished *Fleuti* on its facts and found that it was immaterial to an alien's inadmissibility that his conviction took place only after his return to the United States, while he was on parole for purposes of prosecution. Thus we implicitly determined that, even after the creation of the *Fleuti* doctrine, the basic premise of *Matter of K-* remained valid. *Id.* at 626.

In addition, in 1996 Congress amended section 101(a)(13) of the Act, replacing the definition of "entry" with one for "admission" and "admitted" and indicated that, with certain specified exceptions, a returning lawful permanent resident is not considered to be seeking admission. *See* IIRIRA § 301(a), 110 Stat. at 3009-575. We assessed the changes brought about by this law in *Matter of Rivens*, 25 I&N Dec. at 625, and found "no reason to depart from our longstanding case law holding that the DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident is to be regarded as seeking an admission," thus preserving more than 35 years of consistent treatment of the burden, despite various changes to the relevant admission statutes. Likewise, we find no reason to believe that the Attorney General's decision in *Matter of K-*, which concerns the ability of immigration authorities to parole returning lawful permanent residents into the United States for purposes of prosecution, has been abrogated by IIRIRA's subsequent changes in the statute, and we find that it remains persuasive, if not binding, authority.[7]

We acknowledge that the United States Court of Appeals for the Third Circuit recently applied a different analysis to arrive at essentially the same

---

[7] A House Report explaining the purpose of the provision that became section 301 of the IIRIRA identifies an intention to "replace certain aspects of the current 'entry doctrine,' under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry," and to "preserve[] a portion of the *Fleuti* doctrine . . . [while] overturn[ing] certain interpretations of *Fleuti*." H.R. Rep. No. 104-469, at 225-26 (1996). We have found no indication of any congressional intent to restrict the Attorney General's—and now the DHS's—previously recognized authority to parole returning lawful permanent residents for prosecution.

result we reach today. *Doe v. Att'y Gen. of U.S.*, 659 F.3d 266 (3d Cir. 2011). The court reasoned that because section 212(d)(5) only permits an alien to be paroled if he or she is an "applicant for admission," and because section 101(a)(13)(C) only permits a returning lawful permanent resident to be deemed an applicant for admission if one or more of the six specified criteria applies, some threshold showing must be made that a returning lawful permanent resident fits within an exception before he or she can be paroled.

The majority in *Doe* recognized that "[t]he initial decision whether to treat a permanent resident as an alien seeking admission is made by an immigration officer working at the alien's point of arrival in this country" and that an "elevated standard" would not be consistent with the purposes of the parole statute. *Id.* at 272. It thus held that the DHS could meet its burden of establishing that the exception contained at section 101(a)(13)(C)(v) for a lawful permanent resident "who has committed an offense identified in section 212(a)(2)" had been met by showing that there was "probable cause to believe" that the alien had committed one of the crimes set forth in that section. *Id.* The majority further held that this burden needed to be met by the DHS at the time the returning lawful permanent resident sought entry and the DHS sought to parole him. *Id.* at 269-70, 272.

We observe that under either the approach taken by the Third Circuit or that which we take here, the result would be the same for a returning lawful permanent resident who has been indicted for and is later convicted of a crime involving moral turpitude.[8] Thus, we emphasize that we differ with the Third Circuit mainly in its approach, not its ultimate conclusion.[9] It is true that we

---

[8] We note that the alien in *Doe* was implicated in conduct that clearly constituted a turpitudinous crime, namely, wire fraud. In contrast, the respondent's offense of conviction may or may not ultimately be found to constitute such a crime. The Immigration Judge did not reach this issue, and we will leave it open for resolution on remand.

[9] Specifically, as we previously indicated in *Matter of Rivens*, 25 I&N Dec. at 626 n.4, we respectfully disagree with the *Doe* court's approach because we find that it is based in part on an apparent misapprehension of the legal effect of treating a returning lawful permanent resident as an applicant for admission. Contrary to the court's apparent understanding, *see Doe v. Att'y Gen. of U.S.*, 266 F.3d at 270-71, treating a returning lawful permanent resident as an applicant for admission, paroling such an alien, or even convicting such an alien of a crime identified in section 212(a)(2) does not remove the alien's status as a lawful permanent resident. *See Matter of Lok*, 18 I&N Dec. 101 (BIA 1981) (holding that a lawful permanent resident retains such status until entry of a final administrative order of removal). Further, the *Doe* court's holding that a threshold standard must be met by the DHS before a returning lawful permanent resident is paroled for prosecution fails to take account of the provisions of section 235(a)(1) of the Act, 8 U.S.C. § 1225(a)(1) (2006), which the court never discussed. Pursuant to section 235(a)(1) of the Act, "An alien present in the

(continued...)

are unable to agree with *Doe* that, for purposes of the assessment of the validity of a subsequent removal proceeding, the DHS must meet a threshold standard before it may parole a returning lawful permanent resident into the United States for prosecution and then charge him with inadmissibility on the basis of the results.[10] Nevertheless, the salient point about *Doe* is that it would definitely not subscribe to the view of the concurring and dissenting opinion that a returning lawful permanent resident may not be paroled for purposes of prosecution where clear and convincing evidence of the alien's commission of a crime involving moral turpitude was not available at the point of arrival.

To our knowledge, no threshold test for parole has ever been required in the context of determining the validity of removal proceedings. Moreover, to do so would create tension with principles relating to the DHS's exercise of prosecutorial discretion. *See Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520 (BIA 2011). In taking the position that the respondent's susceptibility to inadmissibility charges must be ascertained by determining whether he was "properly paroled," which in turn would entail assessing the "evidence the DHS would have possessed at the time the respondent presented himself at the border," the concurring and dissenting opinion raises serious questions with regard to our authority to oversee and regulate the DHS's exercise of its law enforcement duties and prerogatives at the ports of entry, including its

---

(...continued)

United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this Act an applicant for admission." In addition to including aliens who have entered the United States without inspection, *see Matter of Lemus*, 25 I&N Dec. 734, 743 n.6 (BIA 2012), this general definition squarely covers parolees, because they, too, are persons present in the United States without being admitted. Thus, parolees qualify as "applicants for admission" under section 235(a)(1) of the Act. To be sure, section 101(a)(13)(C) sets forth an exception applicable to returning lawful permanent residents. However, for the reasons we have explained, that exception comes into play at a different time, that is, in the context of removal proceedings, if and when they have begun.

[10] In that regard, we disagree with the *Doe* majority that there "is a hole in the Immigration and Nationality Act [because it] requires an immigration officer to determine whether an arriving lawful permanent resident has committed a crime, but omits mention of how the officer is to do so." 659 F.3d at 271-72. We submit that our decisions in *Matter of Rivens* and this case show that the various applicable statutory provisions work harmoniously and that there is no need to create a two-stage process whereby first probable cause, and later clear and convincing evidence, of such an alien's commission of a turpitudinous crime must be demonstrated.

prerogative to grant parole. *Matter of Valenzuela-Felix*, 26 I&N Dec. 53, 65, 70 (BIA 2012) (Cole, concurring and dissenting).

We have previously held that "in the nature of things it is singularly appropriate that the parole power in exclusion proceedings be exercised by [Immigration and Naturalization] Service personnel at the field office level and not by this Board," and that we have not been delegated, "directly or by implication, [the] parole authority under section 212(d)(5) of the Act." *Matter of Conceiro*, 14 I&N Dec. 278, 281-82 (BIA 1973), *aff'd*, 360 F. Supp. 454 (S.D.N.Y. 1973). Likewise, we have recognized that we generally lack authority to review the "manner" in which the parole power is exercised by Government officials, including in situations where a party's challenge extends not only to whether a particular grant or denial of parole constitutes an abuse of discretion, but also to whether a contested parole policy is fair, is authorized, or conforms to congressional intent. *See Matter of United Airlines Flight UA802*, 22 I&N Dec. 777, 780-82 (BIA 1999).[11]

We can discern no indication that when Congress enacted section 101(a)(13)(C) of the Act in 1996, it intended to alter the well-established restrictions on our ability to intrude into parole determinations. Indeed, given the subsequent transfer of the parole power from the Attorney General to a new Department (the DHS), of which this Board is not a part, our assumption of authority to review parole determinations would be even more anomalous. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135; *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 261 & n.1 (BIA 2010) (recognizing that the Attorney General no longer has parole authority under section 212(d)(5) of the Act). Our holding that section 101(a)(13)(C) generally relates to the conduct of removal proceedings, rather than the exercise of parole authority, avoids such an anomaly.

Nor do we believe that Congress intended to constrain the DHS in its ability to prove the applicability of one of the six enumerated exceptions in section 101(a)(13)(C) by limiting the DHS to using the evidence it already possesses when a returning lawful permanent resident presents himself at a

---

[11] That is not, however, to say that no court has such authority. We further note that there is no claim that the DHS in this case arbitrarily exercised its parole authority. Nor are we aware of any more general allegation that the DHS has been misusing its authority in this regard, for example, by paroling returning lawful permanent residents for purposes of prosecution where there is no indication that the alien committed an offense or any manifested intent to institute a criminal proceeding. We reiterate that in this case the respondent had been indicted. We need not address potential abuses of the parole authority in contexts other than parole for purposes of prosecution, because our holding here does not purport to address inadmissibility charges brought against returning lawful permanent residents who receive other kinds of parole.

port of entry, at least where, as here, there is no allegation that a parole for purposes of prosecution was effected in bad faith.  See *supra* note 11.

Given that it states no other legal standard, the concurring and dissenting opinion apparently would require that the DHS possess evidence meeting the ultimate "clear and convincing evidence" standard of proof at the time of the lawful permanent resident's arrival at the port of entry.  *See Rivens*, 25 I&N Dec. at 625-26 (stating that the DHS must establish applicability of one of the six enumerated provisions in section 101(a)(13)(C) by clear and convincing evidence).  At that point, however, the DHS is rightly devoting its resources to carrying out its law enforcement responsibilities involving control of the flow of aliens into this country, rather than to ensuring that it already has enough evidence to sustain its ultimate burden of proof in removal proceedings that subsequently may be instituted and litigated.[12]  *See Doe v. Att'y Gen. of U.S.*, 659 F.3d at 272 (acknowledging that "one of the purposes of the provision allowing an arriving permanent resident to be treated as an applicant for admission appears to have been to permit the government to invoke procedures like [section 212(d)(5)] parole—including parole for purposes of prosecution," and that "[r]equiring that the government develop evidence sufficient to win its case before it can take the step of paroling a person for prosecution would make little sense").

We emphasize that nothing in our holding is intended to lessen the DHS's burden to establish by clear and convincing evidence *at the time of the removal hearing* that a returning lawful permanent resident who is charged with inadmissibility, in fact, comes within one of the six enumerated provisions in section 101(a)(13)(C) and consequently may be regarded as an applicant for admission.  Rather, we hold only that in the context of the parole of a returning lawful permanent resident for purposes of prosecution of pending criminal charges, the DHS need not already possess all of the evidence pertinent to sustaining its burden at the time the lawful permanent resident first seeks to come back into the United States, and it ordinarily may rely on the results of the

---

[12] We note that although the regulations provide for parole for the purpose of deferred inspection at a location other than the initial port of entry, these regulations nevertheless treat the "deferred" alien as a continuing "applicant for admission" at the onward port or district office.  *See* 8 C.F.R. § 235.2(a) (2012).  Under the concurring and dissenting opinion's apparent view, parole for deferred inspection of a lawful permanent resident to allow more time to determine whether he comes within one of the six clauses of section 101(a)(13)(C) would not be permitted because "before a returning lawful permanent resident may be regarded as an applicant for admission, and thus be subject to being paroled into the United States rather than simply being admitted, it must *first* be established that one of the six provisions of section 101(a)(13)(C) applies." *Matter of Valenzuela-Felix*, 26 I&N Dec. at 66 (Cole, concurring and dissenting) (emphasis added).

prosecution for purposes of applying section 101(a)(13)(C) in any subsequent removal proceedings.

In light of the above, we conclude that the DHS should have been permitted to try to establish by clear and convincing evidence at the time of the removal hearing that the respondent committed an offense that is identified in section 212(a)(2) of the Act for the purpose of potentially carrying its burden of establishing that the respondent was an applicant for admission under section 101(a)(13)(C) and, consequently, was chargeable under the inadmissibility ground at section 212(a)(2)(A)(i)(I). Therefore, we conclude that the Immigration Judge erred in terminating the respondent's removal proceedings. Accordingly, the DHS's appeal will be sustained and the record will be remanded with instructions that the Immigration Judge make a determination whether the DHS has met its burden in these proceedings.[13]

**ORDER:** The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings are reinstated.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing decision and for the entry of a new decision.

*CONCURRING AND DISSENTING OPINION:* Patricia A. Cole, Board Member

I respectfully concur with the majority opinion insofar as it addresses aliens who have been properly paroled into the United States. Specifically, I agree that if an alien has been properly paroled into the United States and has then been charged with a ground of inadmissibility in removal proceedings, the respondent is an applicant for admission and is inadmissible as charged until the time of the removal hearing. Where I depart from my colleagues is in their implicit assumption that a lawful permanent resident alien who is returning from a trip abroad, such as the respondent in this case, can be regarded as an applicant for admission because of an outstanding arrest warrant.

This case does not concern the parole authority of the Department of Homeland Security ("DHS") when it paroles an arriving lawful permanent resident alien. Rather, the issue presented is when a returning

---

[13] We express no opinion as to the ultimate outcome of this inquiry. Moreover, if the Immigration Judge finds that the respondent's 2010 conviction is not for a crime involving moral turpitude, he should determine whether the respondent can properly be charged with removability based on his 1991 controlled substance conviction in light of *Vartelas v. Holder*, 132 S. Ct. 1479. See *supra* note 6.

lawful permanent resident may be regarded as seeking an admission and be treated as an arriving alien at the port of entry.[1]

The respondent is a longtime lawful permanent resident of the United States. In August 2009, upon return from a trip abroad, he sought entry to the United States as a returning lawful permanent resident. The DHS determined that the respondent was an arriving alien and paroled him into the country for prosecution, which resulted in his conviction. In subsequent removal proceedings, the Immigration Judge found that the Government had not shown that at the time the respondent sought entry into the United States in August 2009, he was an arriving alien. I agree with the Immigration Judge.

The plain and unambiguous language of section 101(a)(13)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(C) (2006), provides that a returning lawful permanent resident alien *shall not* be regarded as seeking an admission unless one of six enumerated provisions applies. Accordingly, before a returning lawful permanent resident may be regarded as an applicant for admission, and thus be subject to being paroled into the United States rather than simply being admitted, it must first be established that one of the six provisions of section 101(a)(13)(C) applies. In this case, the DHS argues that the respondent is to be regarded as an applicant for admission pursuant to section 101(a)(13)(C)(v), which states that returning lawful permanent residents who have "committed" an offense identified in section 212(a)(2) of the Act, 8 U.S.C. § 1182(a)(2) (2006), may be regarded as applicants seeking admission unless they have been granted relief under section 212(h) or section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2006).

As a lawful permanent resident returning after a temporary visit abroad, the respondent should not have been *regarded as an arriving alien*, that is, paroled into the United States for prosecution on the basis of an arrest warrant, because in August 2009 it was not established that he had committed an offense identified in section 212(a)(2) of the Act. The respondent should have been admitted, and he could later be subject to removal proceedings pursuant

---

[1] I find that the majority's reliance on the Attorney General's 1961 decision in *Matter of K-*, 9 I&N Dec. 143, 154 (BIA 1959; A.G. 1961), *complaint dismissed sub nom. Klapholz v. Esperdy*, 201 F. Supp. 294 (S.D.N.Y. 1961), *aff'd per curiam*, 302 F.2d 928 (2d Cir. 1962), which discusses the authority of immigration officers to parole returning lawful permanent residents into the United States, is misplaced. Congress subsequently amended the Act in 1996 to explicitly set forth the limited circumstances in which a returning lawful permanent resident is to be regarded as seeking admission and therefore be subject to parole, so the statutory scheme has significantly changed since the issuance of that decision more than 50 years ago. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA").

to section 237(a) of the Act, 8 U.S.C. § 1227(a) (2006), as opposed to being considered as an alien who is ineligible for admission.[2]

In my view, the majority has redefined the Act by finding that the determination of an "arriving lawful permanent resident" in section 101(a)(13)(C) of the Act only comes into play in the context of removal proceedings. Moreover, the majority does not distinguish between parole for prosecution and the rights and privileges of a lawful permanent resident returning to the United States from a trip abroad. In this regard, this Board and other tribunals have long recognized the fact that lawful permanent residents enjoy greater rights and privileges and generally have stronger ties to the United States than other aliens. *See Taniguchi v. Schultz*, 303 F.3d 950, 957-58 (9th Cir. 2002); *Moore v. Ashcroft*, 251 F.3d 919, 925 (11th Cir. 2001); *Lara-Ruiz v. INS*, 241 F.3d 934, 947 (7th Cir. 2001). One of the manifestations of this fact is that returning lawful permanent residents are, by statute, treated differently from other aliens seeking to be admitted to the United States.[3]

The majority relies on our recent holding in *Matter of Rivens*, 25 I&N Dec. 623 (BIA 2011), that the DHS bears the burden of proving by clear and convincing evidence that a returning lawful permanent resident falls within one or more of six enumerated provisions in section 101(a)(13)(C) of the Act for an alien to be regarded as seeking admission into the United States. However, *Rivens* does not distinguish between the *removability* of a lawful permanent resident and the point at which he or she can be regarded as an arriving alien. The burden of proof for removal should not equate to the burden of proof to determine whether or not a returning lawful permanent resident may be treated as an applicant for admission.

Moreover, I note that the factual scenario in *Matter of Rivens* is distinguishable from the respondent's situation. In *Rivens*, the alien had already been convicted of a crime involving moral turpitude at the time he presented himself at the point of entry, and he therefore was clearly ineligible

---

[2] Under section 212(a)(2)(A) of the Act, an alien is inadmissible if he or she has committed a crime involving moral turpitude at any time. By contrast, an alien is removable under section 237(a)(2)(A) only if he has been convicted of a crime involving moral turpitude that was committed within 5 years of the date of admission.

[3] In *Vartelas v. Holder*, 132 S. Ct. 1479 (2012), the Supreme Court noted the Board's statement that in passing the IIRIRA in 1996, Congress "'expressly preserve[d] some, but not all, of the *Fleuti* doctrine' when it provided that a lawful permanent resident absent from the United States for less than 180 days would not be regarded as seeking an admission except in certain enumerated circumstances, among them, prior commission of a crime involving moral turpitude." *Id.* at 1484 n.2 (quoting *Matter of Collado*, 21 I&N Dec. 1061, 1065 (BIA 1998)).

for admission. In this case, the respondent had not yet been convicted of a crime involving moral turpitude when he sought to return to his lawful domicile or permanent residence. Furthermore, as a lawful permanent resident, the respondent would not be removable for a crime involving moral turpitude unless he was convicted of such a crime within 5 years of admission or was convicted of two or more crimes involving moral turpitude at any time after admission. *See* sections 237(a)(2)(A)(i)–(ii) of the Act.

In fact, what the majority creates in this case is precisely the type of "third category or an undefined second category" of returning lawful permanent residents discussed in *Matter of Collado*, 21 I&N Dec. 1061 (BIA 1998). We recognized there that section 101(a)(13)(C) of the Act provided a general rule that an alien lawfully admitted for permanent residence is not to be regarded as seeking admission and specified exceptions to this general rule under which a lawful permanent resident will be regarded as seeking admission. We rejected the dissent's view that even if an exception such as the commission of a crime involving moral turpitude under section 212(a)(2) applied, the alien was not required to be treated as seeking admission but could simply be treated as such depending on the presence or absence of various factors attendant to both the nature of the departure and the violation in question. We found that such an approach would be inconsistent with the definitional nature of section 101(a)(13)(C) and would create "either a third category or an undefined second category of lawful permanent residents who may or may not be regarded as seeking an admission, depending on a wholly unspecified set of criteria that, presumably, would be developed by case-by-case adjudication." *Id.* at 1064. In my view, the majority's approach in this case would place the respondent into precisely this type of third category, namely, a returning lawful permanent resident who is neither admitted nor deemed inadmissible, but who, instead, is paroled into the United States, may or may not subsequently be charged, tried, and convicted of a crime involving moral turpitude, and may or may not be found to be inadmissible at the time of a later removal hearing based on whether or not such conviction has, in fact, occurred.

I observe that admitting such a returning lawful permanent resident would not leave the DHS without recourse. If the returning lawful permanent resident were later found to have "committed" a crime involving moral turpitude and would be deportable under section 237 of the Act, the DHS could commence removal proceedings. The difference between bringing removability charges under section 212(a)(2)(A) and section 237(a)(2)(A), both of which refer to crimes involving moral turpitude, is not merely academic. As previously noted, whether a returning lawful permanent resident is treated as inadmissible or deportable may determine whether he or she can

remain in the United States because there is an important difference in the Act's treatment of those who have committed crimes involving moral turpitude.

Under section 212(a)(2)(A) of the Act, an alien who has *committed* a crime involving moral turpitude *at any time* is inadmissible. By contrast, an alien is removable under section 237(a)(2)(A) if he or she has been *convicted* of a single crime involving moral turpitude, and only then if the offense was committed *within 5 years of the date of admission*. By providing that returning lawful permanent residents shall not be regarded as arriving aliens subject to charges of inadmissibility absent a showing that one of the six enumerated grounds applies, Congress again recognized the fact that lawful permanent residents, who enjoy greater rights and privileges than other aliens, should be removed for the commission of a single crime involving moral turpitude only if the offense is committed with the first 5 years of the alien's admission for permanent residence.

Moreover, the plain language of section 212(d)(5) of the Act supports the view that the DHS must determine whether a returning lawful permanent resident is to be regarded as an applicant for admission prior to paroling the alien. That section, which describes the Attorney General's parole authority, by definition allows the Attorney General to parole into the United States "any alien applying for admission to the United States." Section 212(d)(5)(A) of the Act. Similarly, the regulation at 8 C.F.R. § 1001.1(q) (2012) defines an "arriving alien" as "an applicant for admission." This is in contrast to section 101(a)(13)(C), which states that a returning lawful permanent resident alien *shall not* be regarded as seeking an admission unless one of six enumerated provisions applies. Thus, it is clear that a determination whether a returning lawful permanent resident is seeking an admission must be made at the time that the alien presents at the border or port of entry. Only a lawful permanent resident identified in one of the six exceptions in section 101(a)(13)(C) of the Act may be paroled into the United States for possible removal proceedings.

Accordingly, I conclude that in order to find that the respondent should be regarded as seeking admission and therefore subject to being paroled into the United States, the DHS needed adequate evidence to establish that he had committed a crime involving moral turpitude at the time the respondent sought to return to the United States as a lawful permanent resident.

This inevitably raises the question of how, or by what standard, the DHS was required to determine that the respondent had "committed" an offense identified in section 212(a)(2) of the Act and thus was to be regarded as seeking admission at the time he presented himself for inspection at the border. The statutory text itself provides the answer. Section 212(a)(2)(A)(i)(I) of the Act makes inadmissible and ineligible to be admitted any alien who has been "convicted of, or who admits having committed, or

who admits committing acts which constitute the essential elements of . . . a crime involving moral turpitude." Thus, in order for the DHS to determine that a returning lawful permanent resident has "committed" a crime involving moral turpitude, it would be required to establish that he was convicted of, admitted having committed, or admitted committing acts that constitute the elements of such an offense, which the DHS routinely does as part of the standard inspection or admission process.

In this case, the Immigration Judge found that the only evidence the DHS would have possessed at the time the respondent presented himself at the border was a warrant for his arrest on bulk cash smuggling charges. I would find no clear error in this factual determination. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2012) (indicating that the Board must defer to the Immigration Judge's factual findings unless they are clearly erroneous). Because the respondent had not yet been convicted of a crime involving moral turpitude at the time he came to the border, and there is no evidence indicating that he otherwise then admitted to having committed such an offense or the elements of such an offense, I would find that he is a returning lawful permanent resident. I would therefore affirm the Immigration Judge's decision terminating removal proceedings without prejudice.

Accordingly, I respectfully dissent from the majority's view that the respondent was appropriately regarded as an arriving alien.