MATTER OF CASTELLON

In Exclusion Proceedings

A-24436419

*Decided by Board February 2, 1981*

(1) The Board of Immigration Appeals does not have authority to review the manner in which the District Directors exercise parole power.

(2) Applicants for admission in exclusion proceedings do not ordinarily enjoy the same constitutional rights that are available to aliens who have made an entry into the United States.

(3) A Cuban "refugee" who had been paroled into the United States was properly found excludable, upon revocation of parole by the District Director, on the ground that he lacked documents as an immigrant, despite the failure of the Immigration and Naturalization Service to establish the companion ground of excludability, commission of a crime of moral turpitude, which had led to the institution of the proceedings.

(4) An application for asylum under section 208, made after the institution of exclusion or deportation proceedings, may also be considered as a request for withholding of deportation under section 243(h).

(5) The application for asylum of a Cuban "refugee" was denied where the application was based only on the alien's unsupported claim that his imprisonment for theft was a politically motivated entrapment, particularly in view of his having been cited on six occasions for exemplary performance in a government office.

EXCLUDABLE:
Order: Act of 1952—Sec. 212(a)(9) [8 U.S.C. 1182(a)(9)]—Convicted of a crime involving moral turpitude
Sec. 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant not in possession of valid unexpired immigrant visa or other valid entry document

ON BEHALF OF APPLICANT:
Donald M. Chinula, Esquire
Atlanta Legal Aid Society, Inc.
302 E. Howard Avenue
Decatur, Georgia 30030

ON BEHALF OF SERVICE:
Jim Tom Haynes, Esquire
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, and Maguire, Board Members. Dissenting Opinion: Irving A. Appleman, Board Member

In a decision dated July 23, 1980, an immigration judge found the applicant excludable under section 212(a)(20) of the Immigration and

Nationality Act, 8 U.S.C. 1182(a)(20), dismissed an additional charge of excludability under section 212(a)(9) of the Act, 8 U.S.C. 1182(a)(9), denied a request from the applicant for political asylum, and ordered his exclusion and deportation from the United States. The applicant has appealed. The appeal will be dismissed.

The applicant is a 29-year-old native and citizen of Cuba who was part of the recent exodus from that country. He arrived on May 8, 1980, at Key West, Florida, and was paroled into the United States temporarily under the provisions of section 212(d)(5) of the Act, 8 U.S.C. 1182(d)(5). On May 16, 1980, employees of the Immigration and Naturalization Service interviewed the applicant in the Spanish language and then prepared an affidavit and a Request for Asylum (Form I-589) for him in English, which he then submitted to a Service District Director. These documents state that the applicant was convicted in Cuba in 1976, for the crime of embezzlement and sentenced to 12 years in prison. On the basis of this information, the District Director terminated the applicant's parole, detained him pursuant to section 235(b) of the Act, 8 U.S.C. 1225(b), and on June 9, 1980, charged him with being excludable from the United States under section 212(a)(9) of the Act on the ground that he had been convicted of a crime involving moral turpitude, and under section 212(a)(20) on the ground that he was not in possession of a valid, unexpired immigrant visa or other valid entry document.

On May 28, 1980, the District Director requested an opinion from the Department of State concerning the applicant's asylum claim. A Deputy Assistant Secretary for Human Rights and Humanitarian Affairs, at the Department of State, replied that he believed that the applicant had commited a serious nonpolitical crime prior to his arrival in the United States and that he was therefore not eligible for asylum. On June 26, 1980, the District Director denied the applicant's asylum request on the ground that he had been arrested and convicted in Cuba of a serious nonpolitical crime.

On July 23, 1980, the applicant appeared before the immigration judge, with counsel, at an exclusion hearing. The applicant admitted that he did not have a visa, but he denied that he was excludable under either of the alleged charges. The applicant also renewed his application for asylum.

The applicant alleged in support of his asylum request that his criminal conviction was the result of politically motivated entrapment. According to his testimony, the following events led to the conviction. In 1976, while he was working at the Ministry of Transportation in Cuba, a fellow employee at the Ministry asked him to join the Communist Party. He refused to join, and because of that refusal, efforts were made to remove him from his position. These efforts were un-

sucessful, however, because he had been cited on six occasions for being an exemplary employee and no firm basis could be found for firing him. Subsequently, the employee who had asked him to join the Communist Party convinced him that she was planning to escape from Cuba with several other employees. She persuaded him to join the group and to assist them in stealing money from the Ministry to finance their escape. Sometime later, she told him during a dinner break that the money had been taken and that it was in his office. When he returned to his office, he found the money in a box under his desk. Several minutes later, policemen entered the office and arrested him. A trial was held, he was found guilty of some form of theft, and then he was sentenced to 12 years in prison. After serving 4 years of that sentence, he was released to emigrate to the United States.

The applicant also testified that the Cuban government had discriminated against him because he was Catholic. He had to work longer hours and could not attend religious ceremonies. He admitted, however, that most Cubans were Catholics and that apparently they were all persecuted by the Cuban government because of their religious beliefs. He testified further that he was accused in 1974 of holding anti-government meetings in his home, but that the charge was never substantiated.

The immigration judge found that the excludability charge under section 212(a)(9) of the Act could not be sustained. He found further, however, that the applicant was excludable under section 212(a)(20) as an immigrant who did not have a valid, unexpired immigrant visa or other valid entry document. Finally, he denied the applicant's application for asylum on the ground that the applicant had not established a significant probability that he would be singled out for persecution by the Cuban government if he returned to that country.

In his appeal brief and during an oral argument before this Board, the applicant has contended that it is manifestly unjust to order his exclusion under section 212(a)(20) of the Act. The Service paroled him into the United States knowing that he did not have entry documents, and the only reason for separating him from thousands of other Cuban refugees who were paroled in without entry documents, was the suspicion that he might be excludable under section 212(a)(9) of the Act. Since the immigration judge has found that he is not excludable under that section of the Act, there is no longer any reason to deny him the parole status that his undocumented countrymen are enjoying.

In response to a request from this Board to clarify the Service's position on the applicant's argument, the appellate trial attorney, who appeared for the Service at the oral argument, submitted the following memorandum on October 29, 1980. A copy of this memorandum was

sent to the applicant.

At oral argument in the above-referenced matter on October 21, 1980, the Board requested the Service's views on a policy question which was presented. That question is whether the Service intends to seek exclusion under Section 212(a)(20) of the Act of a Cuban national such as the applicant herein after a charge under Section 212(a)(9) has not been sustained by the Immigration Judge.

It is the present Service policy to pursue an exclusion order under Section 212(a)(20) in such circumstances. A separate determination will be made in such cases as to whether release from custody is warranted.

Before addressing the applicant's argument, we will briefly summarize the procedures that ordinarily are followed by the Service when an alien seeks to enter the United States. In addition to any physical or mental examinations which might be required, the alien is inspected by an immigration officer pursuant to section 235(a) of the Act. If the immigration officer concludes that the alien appears to be clearly and beyond a doubt entitled to enter the United States, he is admitted. Otherwise, he is detained for an exclusion hearing before an immigration judge pursuant to section 235(b) of the Act. If the immigration judge finds that the alien is excludable and orders him excluded and deported from the United States, the alien may appeal the immigration judge's decision to this Board.

In this case, the applicant and his countrymen arrived at Key West, Florida without entry documents and were taken into custody by the Service. In view of their extraordinary circumstances, the inspection process of section 235(a) was deferred and they were paroled into the United States by the District Director under section 212(d)(5) of the Act. It is important to note in this regard that under the terms of that section such parole did not constitute an admission of these aliens into the United States. Moreover, the section provides further that when such parole status is terminated, the paroled aliens shall forthwith return or be returned to the custody from which they were paroled, and thereafter they will be dealt with in the same manner as that of any other applicants for admission to the United States. Consequently, when the District Director subsequently acquired information which led him to believe that the applicant was excludable under section 212(a)(9), and revoked his parole status on the basis of that information, he was returned to the custody of the Service and placed in exclusion proceedings.

Turning now to the applicant's argument, we note first that our authority in this matter is limited. Although we agree with the applicant that there does not appear to be a sufficient justification for keeping him in exclusion proceedings, while thousands of other undocumented Cubans are enjoying parole status, we cannot reinstate his parole status. The Attorney General delegated the exercise of the

parole power under section 212(d)(5) exclusively to the District Directors, and this Board does not have authority to review the manner in which they exercise that power. *Matter of Niayesh,* Interim Decision 2753 (BIA 1980); *Matter of Lepofsky,* 14 I&N Dec. 718 (BIA 1974); *Matter of Conceiro,* 14 I&N Dec. 278 (BIA 1973), *aff'd, Conceiro v. Marks,* 360 F.Supp. 454 (S.D.N.Y. 1973). Our role in these proceedings is limited to reviewing the immigration judge's finding of excludability and his rejection of the applicant's asylum request. Moreoever, the scope of our review is limited further by the fact that applicants for admission in exclusion proceedings do not ordinarily enjoy the same constitutional rights that are available to aliens who have made an entry into the United States. *Matter of Cenatice, et al.,* 16 I&N Dec. 162 (BIA 1977).[1]

Section 212(a) of the Act provides in pertinent part that aliens in the following class shall be excluded from admission into the United States:

(20) Except as otherwise specifically provided in this Act, any immigrant who at the time of application for admission is not in possession of a valid unexpired visa, ... or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document ...

The term "immigrant" in that section refers to all aliens who have not established that they are entitled to a "nonimmigrant" classification. *See* section 214(b) of the Act, 8 U.S.C. 1184(b).

The applicant has not established or even claimed entitlement to a "nonimmigrant" classification. Consequently, he is an "immigrant." Secondly, we are not aware of any law or regulation which exempts immigrants in the applicant's situation from compliance with the documentary requirements of section 212(a)(20). Accordingly, since he does not have the documents required by that section, we find that he is excludable from the United States.

The applicant also contends that political asylum should be granted to him because he will be persecuted in Cuba on account of his religious and political beliefs, and he will be returned to prison to serve the balance of the 12-year sentence for the trumped up theft charge.

An application for political asylum under section 208 of the Act, 8 U.S.C. 1158, made after the institution of exclusion or deportation proceedings, shall also be considered as a request for withholding of deportation under section 243(h) of the Act, 8 U.S.C. 1253(h). 8 C.F.R. 208.3(b) (effective June 1, 1980). While we recognize that there may be

---

[1] *Compare Paktorovics v. Murff,* 260 F.2d 610 (2 Cir. 1958), in which it was held that an alien had a constitutional right to due process even though he had not been admitted to the United States. That case, however, involved special circumstances that are not present in these proceedings. *See Ahrens v. Rojas,* 292 F.2d 406 (5 Cir. 1961); *Sui Fung Luk v. Rosenberg,* 271 F.Supp. 485 (C.D. Cal. 1967).

differences between "asylum" and "withholding of deportation" in another context, we will refer to both forms of relief by the term "asylum" in this case. An applicant for such relief must establish that, if deported, he would be subject to persecution based on his race, religion, nationality, membership in a particular social group, or political opinion. *Matter of McMullen*, Interim Decision 2831 (BIA 1980).

Accordingly, we will address the merits of the applicant's asylum request. The only significant allegation in the applicant's asylum claim is that his imprisonment was the result of politically motivated entrapment, and he has not supported that allegation with any evidence other than his own account of the events which led up to the imprisonment. Furthermore, we find it incredible that the Cuban government would orchestrate such a scheme because of the applicant's refusal to join the Communist Party or on account of unsubstantiated accusations that covert political meetings had been held at his home, especially in view of the fact that the applicant had been cited on six occasions for exemplary performance as an employee at a government office. We find, therefore, that he has not met his burden of establishing eligibility for asylum.

We conclude that the decision of the immigration judge was correct. Accordingly, we will dismiss the applicant's appeal.

ORDER: The appeal is dismissed.

## DISSENTING OPINION: Irving A. Appleman, Board Member

I respectfully dissent.

The applicant arrived May 8, 1980, as part of the Cuban boat-lift. He was paroled, and was placed under exclusion proceedings on June 9, 1980, charged with inadmissibility under section 212(a)(9) for commission of a crime, and section 212(a)(20) for lack of a valid visa. The majority decision sustains the immigration judge's decision rejecting the first, but finds him inadmissible on the second. Simultaneously, it denies his application for asylum under the Refugee Act of 1980, P.L. 96-212, 94 Stat. 102, because of a failure to establish that he would be persecuted on return to Cuba.

According to an Immigration and Naturalization Service press release of June 26, 1980, Cubans who arrived in the United States between April 21, 1980, and June 19, 1980, and were in Immigration and Naturalization Service proceedings as of the latter date, were to be granted extensions of parole to January 15, 1981. This was "in compliance with President Carter's previously announced policy to give Congress time in which to consider special legislation that would regularize the status of Cubans and Haitians known to be in the United

States prior to June 19."[1]

The policy referred to was set forth in a published statement of Victor H. Palmieri, U.S. Coordinator for Refugee Affairs on June 20, 1980. "... This legislation [The Refugee Act of 1980] did not contemplate the kind of situation we face now, with a sudden massive influx, without overseas processing and valid documentation. ... In order to redress this extraordinary situation yet maintain the integrity of our refugee laws for those applying for admission in the prescribed manner, the President has decided to seek special legislation regularizing the status of Cuban-Haitian entrants...."

The administration bill, *S. 3013*, was introduced on August 5, 1980. It created a special Cuban/Haitian Entrant status for these Cubans who arrived after April 20 and before June 20, 1980, and provided for adjustment of status after 2 years. These admissions would not count against the numerical limitations of the Immigration and Nationality Act. In submitting the bill to the Congress, a spokesman for the Attorney General stated, "This special, one time only, legislation is necessary to meet problems not contemplated by the Refugee Act of 1980. The refugee provisions of the Act do not provide for the sudden and massive arrival of persons to the United States who did not undergo overseas processing. ... *Additionally, many of the Cubans and Haitians would not qualify under the strict standards for asylum."* (Emphasis supplied.) *See Congressional* Record—Senate, August 5, 1980, *S. 10825* at *S. 10827.*[2]

From the outset, these Cubans have been regarded as outside the asylum provisions of the Refugee Act of 1980. However, where there was reason to believe the alien was inadmissible for commission of a crime, the Service has instituted exclusion proceedings and has accepted and processed asylum applications. Other Cubans who arrived during the specified period are not being placed in exclusion proceedings, nor are their asylum applications being processed. *See* oral argu-

---

[1] *See* press release, quoted in American Council for Nationalities Service, *Interpreter Releases,* Vol. 57, No. 25, pp. 305-6, June 30, 1980. The implementing Immigration and Naturalization Service instructions appear in a telegraphic message to field offices dated July 3, 1980, under file no. CO 242.1-P. The same treatment has now been authorized for Cubans who arrived between June 20, 1980, and October 10, 1980, and who were in Service proceedings as of October 10, 1980. *Interpreter Releases,* Vol. 57, No. 41, October 23, 1980. "[I]n Immigration and Naturalization Service proceedings is interpreted as meaning any Cuban or Haitian who has appeared before an immigration officer and has been documented in some fashion." Service telegram of July 3, 1980, *supra.*

[2] "The Refugee Act ... did not intend to address a situation of this type or magnitude." Key Issues lecture by Peter W. Rodino, Jr., Chairman, Committee of the Judiciary, United States House of Representatives, November 12, 1980, reprinted in American Council for Nationalities Service *Interpreter Releases,* November 19, 1980, Vol. 57, No. 44, p. 535, at 542.

ment p. 9.

There is justification for treating a Cuban who may be excludable because of a criminal conviction, as excepted from the general policy and procedure. Only a relative few of the boat-lift Cubans have committed "serious nonpolitical crimes." If they are conceivably a danger to the community, or if, according to their past histories, there is reason to believe they are ineligible for, or unworthy of, gaining a foothold in this country, then they should be subject to the strictures of the Immigration and Nationality Act, just as much as, *e.g.*, an alien who seeks to enter with subversive intent, 8 U.S.C. 1182(a)(29). The institution of exclusion proceedings against this special group is not unreasonable and we have had no hesitation in accepting jurisdiction over appeals from adverse rulings below.

The appeals have presented dual aspects of excludability and "refugee" status. In passing on the appeals, we have regarded each asylum application under the Refugee Act, as embracing an application for a stay of deportation to Cuba under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. 1253(h). Once excludability under 8 U.S.C. 1182(a)(9) was established, we have passed on the section 243(h) application. However, we have declined, sub silentio, to rule on eligibility for asylum under the Refugee Act, since that question was awaiting legislative resolution at the request of the administration. In considering section 243(h) relief, we applied the requirements for that relief as now amended by the Refugee Act of 1980, including the bar for those who have committed a "serious nonpolitical crime." The persecution issue was reached as a part of the analysis of the possible political nature of the crime. *See Matter of Rodriguez-Palma*, Interim Decision 2815 (BIA 1980).

It could be argued that consideration of the section 243(h) application should also have been deferred. We chose not to, because of our long-standing and established jurisdiction over this relief as a part of the Immigration and Nationality Act,[3] and the fact that, as a stay of deportation to a designated country, it was an inherent part of the appeal before us, distinguishable from a grant or denial of permanent residence to an asylee. "Asylum" applications for the "boat-lift" Cubans may or may not be under our jurisdiction when the matter is finally resolved by the Congress, and implemented by regulation. The requirements for "asylum" for the group, in whatever form that relief takes, are not even known to us at this writing. Hence, while the terms "asylum" and "refugee" have frequently been used interchangeably,

---

[3] Although jurisdiction over the application in exclusion proceedings was extended to immigration judges and the Board only on May 10, 1979 (8 C.F.R. 236.3), it has long been a part of deportation proceedings (8 C.F.R. 242.17(c)).

and the Service itself uses one application form to cover both (*see* 8 C.F.R. 108.1), up to now, this Board has not ruled upon Cuban asylum applications under the Refugee Act of 1980, although we have passed upon the same application insofar as it could be deemed a request for a stay of deportation under section 243(h) of the Act.[4]

This selectivity has now been abandoned. The majority has considered the asylum application on the merits under the Refugee Act. Of course the applicant cannot qualify. Very few of these Cubans can. Their ineligibility has been acknowledged publicly, yet their removal has not been sought. Rather, their paroles have been extended while legislation is pressed to take care of them, despite the lack of a visa and the inapplicability of the Refugee Act.

The sole apparent reason the applicant was singled out for the initiation of exclusion proceedings, was because of a possible criminal basis for excludability under 8 U.S.C. 1182(a)(9). For the reasons noted, this was acceptable. The criminal ground of excludability has fallen by the wayside. Nevertheless, the Service insists that the case continue to be prosecuted and that the appeal be decided in all aspects, and the majority has acquiesced. This raises an issue whether the full sanction of the law should be applied, at this time, when the applicant has not been shown to be within any special category, but is excludable solely for grounds applicable to all of the other thousands of Cubans who came here when he did.

The other "boatlift" Cubans are in a limbo where they are not subjected to exclusion proceedings, where no order of exclusion and deportation has been entered against them, where their asylum applications are neither denied nor approved, but are either not accepted, or, if accepted, are not processed. None of them have immigration documents and they are equally inadmissible for lack of them. It is doubtful if more than a handful could qualify technically under the Refugee Act. On the record before us, the applicant is now in like position, yet the majority has affirmed his inadmissibility for lack of a valid visa, has denied his asylum claim for lack of proof, and has ordered his exclusion and deportation.

In my view, it is both absurd and improper for the Service to press forward with this case now that the exclusion charge based on a crime is no longer applicable. This Board acts as the surrogate of the Attorney General in those matters within our jurisdiction. This is obviously a policy area, but it is not one in which policy is unclear. I see no

---

[4] *Matter of Rodriguez-Palma, supra.* For discussion of possible differences between a stay of deportation under section 243(h) and asylum, *see Matter of McMullen,* Interim Decision 2831 (BIA 1980). *Cf. Matter of Dunar,* 14 I&N Dec. 310 (BIA 1973), for comparison prior to Refugee Act.

room for interpretation by us of the applicability of the statute to this applicant at this time. By ruling as it has, the Board has defeated the expressed desire of the executive branch of the Government, and anticipated adversely the as yet unexpressed will of the Congress. This I am unwilling to do.

True, there is no immediate threat of removal from the United States. The Service is not presently deporting aliens to Cuba, so far as known. Nevertheless, many possibilities exist. The visa requirement which is the basis of the no-visa charge under 8 U.S.C. 1182(a)(20) may be waived legislatively as to this special group.[5] They may be relieved entirely of the asylum requirements of the Refugee Act, or be statutorily defined as "refugees," either within or outside of existing legislation, and regardless of proof of individual persecution. Admittedly, if, as, and when something of this sort takes place for other Cubans in like position, this applicant, if still here, may move to reopen these proceedings. On the other hand, he may not still be here, given the outstanding order, the variable status of relations with Cuba (under which Cuba might conceivably accept him back at some future date), the possibility that some other country may accept him, and the already demonstrated enthusiasm of the Service for continuing to move against him despite the failure of the criminal charge. Even more importantly, the Board here sets a precedent under which the Service is free to impose the full sanction of the Immigration and Nationality Act on *any* of the boat-lift Cubans, whether in an excepted group or not.

I see no need to take these risks. No harm would be done in placing the applicant back with the others in like status, to be treated however they are ultimately treated, and under the same standards. I would therefore remand this case to the Service, without passing at this time on either inadmissibility under section 212(a)(20), 8 U.S.C. 1182(a)(20), or on his asylum application, leaving it to the Service to take appropriate action as to parole.

---

[5] *S. 3013*, made paragraphs (14), (15), (20), (21), (25), and (32) of section 212(a) of the Immigration and Nationality Act inapplicable, and permitted the Attorney General to waive any other provision of section 212(a) except (27), (29), (33), and that part of (23) relating to traffic in narcotics. *Congressional Record*—Senate, *S. 10825*, August 5, 1980. The bill was still pending when Congress adjourned and will undoubtedly be reintroduced.