# Matter of L-T-P-, Respondent

*Decided December 1, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An applicant for adjustment of status under section 209 of the Immigration and Nationality Act, 8 U.S.C. § 1159 (2012), must be either a refugee or an asylee.

(2) Cubans who were paroled into the United States under section 212(d)(5) of the Act, 8 U.S.C. § 1182(d)(5) (1976), between April 1, 1980, and May 18, 1980, are considered to have been admitted as refugees pursuant to the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102.

(3) The respondent, who was paroled into the United States on August 25, 1980, with an Arrival/Departure Record (Form I-94) that was stamped "Cuban/Haitian Entrant (Status Pending)" and indicates that the purpose of his parole was for "Cuban Asylum," is ineligible to adjust his status under section 209 of the Act because he was neither admitted as a refugee nor granted asylum.

FOR RESPONDENT: Joseph ThurdeKoos, Esquire, Orlando, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Yon Alberdi, Assistant Chief Counsel

BEFORE: Board Panel: COLE and PAULEY, Board Members; O'HERRON, Temporary Board Member.

O'HERRON, Temporary Board Member:

In a decision dated February 4, 2014, an Immigration Judge found the respondent removable on his own admissions under section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(A)(i)(II) (2012), as an alien who has been convicted of a controlled substance violation, and denied his applications for relief from removal.[1] The respondent has only appealed from the Immigration Judge's denial of his request for a waiver of inadmissibility under section 209(c) of the Act, 8 U.S.C. § 1159(c) (2012). The Immigration Judge found that he lacked jurisdiction to grant such a waiver because the respondent is neither

---

[1] The Immigration Judge's decision incorporates by reference a prior decision that was entered on September 18, 2012.

a refugee nor an asylee and is therefore ineligible for adjustment of status under section 209 of the Act.  The appeal will be dismissed.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Cuba who was paroled into the United States on August 25, 1980, as part of the Mariel Boatlift.  His Arrival/Departure Record (Form I-94) was stamped "Cuban/Haitian Entrant (Status Pending)."  The form indicates that he was paroled pursuant to section 212(d)(5) of the Act, 8 U.S.C. § 1182(d)(5) (1976), for the purpose of seeking "Cuban Asylum."

On August 19, 1986, the respondent was convicted of three counts of conspiracy to violate Maryland's controlled dangerous substance laws.  On May 11, 2010, he applied for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (2006), and section 1 of the Cuban Refugee Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161, 1161, as amended ("Cuban Adjustment Act").  The United States Citizenship and Immigration Services ("USCIS") denied the respondent's application for adjustment of status under section 245 of the Act on July 22, 2010, determining that he was inadmissible under sections 212(a)(2)(A)(i)(II) and (a)(2)(C) of the Act, for which there is no available waiver of inadmissibility.

The Department of Homeland Security issued a notice to appear on October 26, 2010, initiating removal proceedings and charging the respondent with inadmissibility under section 212(a)(2)(A)(i)(II) of the Act.  At a removal hearing, the respondent applied for adjustment of status in conjunction with a waiver of inadmissibility under section 209(c).  The Immigration Judge denied the application after determining that the respondent lacked the requisite status as either a refugee or an asylee, finding instead that he had been paroled into the United States under section 212(d)(5) of the Act.  The Immigration Judge also pretermitted the respondent's application for asylum and related relief.  The respondent has appealed only from the determination that he is ineligible for adjustment of status and a waiver of inadmissibility under section 209(c) of the Act because he was not admitted as a refugee or an asylee.[2]

---

[2]  The respondent also argues that his 1986 controlled substance conviction does not preclude him from applying for a section 209(c) waiver since it is not a conviction for illicit trafficking of a controlled substance under section 212(a)(2)(C) of the Act. Because we conclude that the respondent is statutorily ineligible for adjustment of status under section 209 of the Act, we need not decide whether his conviction renders him ineligible for a section 209(c) waiver.

## II. ISSUE

To resolve whether the respondent can waive his inadmissibility under section 209(c) of the Act, we must decide if he is a refugee or an asylee as a result of his parole into the United States in August 1980 and is therefore eligible for adjustment of status under sections 209(a) or (b) of the Act. We review this question of law de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2016).

## III. ANALYSIS

### A. Adjustment of Status Under Section 209 of the Act

Section 209 of the Act authorizes the Attorney General to adjust the status of certain aliens who have either been admitted as refugees under section 207 of the Act, 8 U.S.C. § 1157 (2012), or granted asylum under section 208 of the Act, 8 U.S.C. § 1158 (2012). Sections 209(a)−(b) of the Act; 8 C.F.R. §§ 1209.1, 1209.2 (2016). To be eligible for adjustment of status, such refugees and asylees must, among other requirements, be admissible to the United States. However, even if an applicant is inadmissible, section 209(c) of the Act provides a mechanism for waiving certain grounds of inadmissibility.[3] *See Matter of Jean*, 23 I&N Dec. 373, 381 (A.G. 2002).

The threshold question for determining the respondent's eligibility for adjustment of status under sections 209(a) or (b) of the Act is whether he has been admitted as a refugee under section 207 or was granted asylee status under section 208. Both sections require an applicant to qualify as a "refugee," as that term is defined in section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (2012). However, section 207 of the Act only applies to individuals who seek to be admitted as refugees from outside the United States, whereas section 208 applies to those who apply for asylum while physically present in the country. Sections 207(c)(1), 208(a)(1) of the Act.

---

[3]  Section 209(c) of the Act provides as follows:

> The provisions of paragraphs (4), (5), and (7)(A) of section 212(a) shall not be applicable to any alien seeking adjustment of status under this section, and the Secretary of Homeland Security or the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

B. History of Cuban Migration to the United States

To determine whether the respondent was either admitted to the United States as a refugee or obtained asylee status in the United States, we must first consider the history of classifying Cubans who enter the United States as "refugees" under the Act.

By the time the respondent arrived in August 1980, the United States had been accepting Cubans fleeing their country for more than two decades. After Fidel Castro came to power in 1959, Cubans did not enter the United States as refugees but were instead paroled into the country. H.R. Rep. No. 96-608, at 4 (1979).[4]

Between 1959 and 1966, former section 245(c) of the Act, 8 U.S.C. § 1255(c) (1964), prohibited Cubans from adjusting their status from inside the United States, because it required natives of countries that were contiguous to the United States or of adjacent islands to leave the country and reenter in order to become eligible for permanent resident status. *See* H.R. Rep. No. 89-1978, at 2, 7 (1966); 112 Cong. Rec. H27,449, H27,450 (daily ed. Oct. 21, 1966) (statement of Rep. Rooney); 107 Cong. Rec. S19,949–50 (daily ed. Sept. 26, 1961) (statement of Sen. Javits); *see also* H.R. Rep. No. 96-608, at 4. In 1966, the Cuban Adjustment Act exempted Cuban migrants from the requirement that they apply for permanent residence outside the United States, but this exemption did not confer "refugee" status on them under the immigration laws. *See* 112 Cong. Rec. at H27,450.

On March 17, 1980, Congress enacted section 201(b) of the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, 103 ("Refugee Act"), which designated a maximum number of refugees that the United States would admit each year, along with procedures to increase that number in emergency situations. Edward M. Kennedy, *Refugee Act of 1980*,

---

[4]  The Attorney General's parole authority under section 212(d)(5) of the Act, which was first authorized by the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163, was originally intended for the temporary admission of an otherwise inadmissible alien. The practice of using parole for the admission of groups or classes of aliens, rather than individuals, started with the Hungarian refugee crisis in 1956, and it was subsequently used on an ad hoc basis to parole Cubans coming into the United States. H.R. Rep. No. 96-608, at 3–4.

In 1961, President Kennedy created the Cuban Refugee Program, a comprehensive assistance program for Cuban migrants that defined the term "refugee" broadly for purposes of its administration. John F. Thomas, Cuban Refugee Program, 1 Welfare Rev. 1, 1–2, 5–6 (1963), http://heinonline.org/HOL/Page?handle=hein.journals/welfinre1&id =95&collection=journals. However, the program did not alter the fact that those Cubans who were paroled into the country had "parolee" status. *Id.* at 5–6.

15 Int'l Migration Rev. 141, 149–50 (1981), http://www.lirs.org/wp-content/uploads/2016/06/Refugee-Act-of-1980.pdf; *see also* 126 Cong. Rec. H1519, H1520 (daily ed. Mar. 4, 1980) (statement of Rep. Holtzman). The relevant legislative history of the Refugee Act indicates that "all refugees . . . will be admitted as refugees," rather than as parolees. H.R. Rep. No. 96-608, at 16; *see also* 126 Cong. Rec. at H1521.[5] The effective date of the new refugee admission provisions was April 1, 1980. Refugee Act, § 204(b)(1)(A), 94 Stat. at 108.

Although the Refugee Act maintained the Attorney General's parole authority under section 212(d)(5) of the Act, the new scheme under section 207 was intended to replace the ad hoc use of parole to manage the influx of Cubans coming to the United States during the previous two decades. Kennedy, *supra*, at 143, 151; *see also* Refugee Act, § 203(f), 94 Stat. at 107–08; 126 Cong. Rec. at H1520. To that end, Congress added section 212(d)(5)(B) to the Act, which provided that the Attorney General could not parole an alien "who is a refugee unless the Attorney General determines that compelling reasons in the public interest *with respect to that particular alien* require that the alien be paroled into the United States rather than be admitted as a refugee under section 207 of the Act." (Emphasis added.) Section 212(d)(5)(B) became effective 60 days after the March 17, 1980, enactment of the Refugee Act. Refugee Act, § 204(b)(1)(B), 94 Stat. at 108.

At the beginning of 1980, the large numbers of Cubans entering the United States were considered to be refugees under the Refugee Act. Kennedy, *supra*, at 153. On April 15, 1980, President Carter signed an executive order to invoke the emergency provisions of the Refugee Act to allow greater numbers of Cubans to be admitted as refugees. Exec. Order No. 12,208, 45 Fed. Reg. 25,789 (Apr. 16, 1980). However, as result of the escalating crisis, "[t]he Administration abandoned the use of the Refugee Act and refused to consider any Cubans as refugees." Kennedy, *supra*, at 153. The Carter Administration eventually "settled on a policy of officially considering the Cubans as 'illegal' entrants." *Id.* at 152. On June 20, 1980,

---

[5]   The Refugee Act also provided the definition of a "refugee," which is set forth in section 101(a)(42) of the Act. This definition conformed to that used by the United Nations Convention Relating to the Status of Refugees, *adopted* July 28, 1951, 19 U.S.T. 6259, 189 U.N.T.S. 150 (entered into force Apr. 22, 1954), and the United Nations Protocol Relating to the Status of Refugees, *opened for signature* Jan. 31,1967, 19 U.S.T. 6223, 606 U.N.T.S. 267 (entered into force Oct. 4, 1967; for the United States Nov. 1, 1968). *See also* Refugee Act, § 201(a), 94 Stat. at 102–03; H.R. Rep. No. 96-608, at 9; 126 Cong. Rec. at H1520. The previous definition of a "refugee" had applied only to aliens fleeing communism or certain areas of the Middle East. Kennedy, *supra*, at 143; *see also* 126 Cong. Rec. at H1520.

President Carter announced "an additional *ad hoc* response to the Cuban crisis by exercising parole authority for six months and seeking special legislation to adjust the status of the refugees and provide resettlement assistance. A new temporary status was created: 'Cuban/Haitian Entrant (Status Pending)'." *Id.* at 155.

For several weeks, the former Immigration and Naturalization Service ("INS") granted "conditional entrant" status to a number of aliens who were outside the United States, and these aliens were subsequently "paroled" into the country from abroad rather than being "admitted" as refugees under new section 207 of the Act. *See* 7 USCIS Policy Manual, pt. L, chp. 2 (updated Mar. 4, 2014), http://www.uscis.gov/policymanual /HTML/PolicyManual-Volume7-PartL-Chapter2.html ("USCIS Policy Manual"). To ensure that such conditional entrants were not placed at a disadvantage relative to those who had been admitted as refugees, the regulations implementing section 209 of the Act specified that "[e]very alien processed by the [INS] abroad and paroled into the United States as a refugee after April 1, 1980, and before May 18, 1980[,] shall be considered as having entered the United States as a refugee under section 207(a) of the Act." 8 C.F.R. § 209.1(a)(2) (1982).

Thus, only Cubans who were paroled into the United States between April 1, 1980, and May 18, 1980, were considered to have entered as "refugees" under the Refugee Act. Beginning on June 20, 1980, pursuant to President Carter's announcement, Cubans who came to the United States were treated as parolees rather than refugees. Kennedy, *supra*, at 155.[6]

## IV. APPLICATION TO THE RESPONDENT

Considering the respondent's case in light of the historical context outlined above, we conclude that he is not eligible for adjustment of status under either sections 209(a) or (b) of the Act in conjunction with a waiver of inadmissibility under section 209(c) because he is neither a refugee under section 207 of the Act nor an asylee within the meaning of section 208.

---

[6]   On August 5, 1980, the Cuban/Haitian Entrant Bill, which would have allowed for the adjustment of status of refugees and provided resettlement assistance, was introduced in both houses of Congress. *See* Kennedy, *supra*, at 155 (citing S. 3013, 96th Cong. (1980); H.R. 7978, 96th Cong. (1980)). However, Congress took no action on the bill or on Senator Kennedy's substitute amendment that would have declared a Cuban/Haitian Entrant to be a "refugee" under the Refugee Act of 1980. *See id.*

## A. Refugee

The respondent asserts that he was admitted as a refugee. At the outset, we note that he has not established that he filed a Registration for Classification as Refugee (Form I-590) with the INS at an office or consular post abroad and presented himself for inspection at a port of entry. *See* 8 C.F.R. §§ 207.1(a), 207.2, 207.4 (2016). Therefore, the respondent did not apply for refugee status abroad and then procure "admission" pursuant to any orderly refugee procedure.

Furthermore, as discussed above, for several weeks after the effective date of the Refugee Act of 1980, the INS granted "conditional entrant" status to a number of aliens who were outside the United States, and these aliens were subsequently paroled into the country from abroad rather than being admitted as "refugees" under section 207 of the Act. By regulation, every alien who was processed by the INS abroad and paroled into the United States between April 1, 1980, and May 18, 1980, was considered to have entered the United States as a "refugee." 8 C.F.R. § 209.1(a)(2). However, after June 1980, President Carter used parole authority to allow Cubans to enter the United States. The record reflects that the respondent was paroled into the United States on August 25, 1980. He therefore did not enter this country as a "refugee."

The respondent recognizes that his parole document indicates only that he was paroled pursuant to section 212(d)(5) of the Act. However, he contends that he must have been paroled as a refugee under section 212(d)(5)(B) for "compelling reasons in the public interest" because of the political and humanitarian concerns surrounding the Mariel Boatlift. He also argues that his Form I-94 demonstrates that he was paroled as a refugee because it is stamped "Cuban/Haitian Entrant (Status Pending)" and reflects that his parole was granted pursuant to section 212(d)(5) of the Act for the purpose of "Cuban Asylum."

We are not persuaded that the respondent's Form I-94 demonstrates that he was paroled as a "refugee" under section 212(d)(5)(B) of the Act. That section prohibits the parole of an alien as a refugee absent compelling reasons "with respect to that particular alien." The respondent has not provided any evidence that the Attorney General found, with respect to him specifically, that "compelling reasons in the public interest" required him to be paroled as a refugee under section 212(d)(5)(B) of the Act. And his arrival via the Mariel Boatlift is not, by itself, sufficient to show that he was identified as an alien who should be paroled for such compelling reasons.

The respondent also asserts that he must have been designated as a refugee because the INS did not fully implement the new refugee admission procedures of the Refugee Act until 1981. However, President Carter had

stopped using the refugee admission provisions of the Refugee Act—in section 207 of the Act—to allow Cubans to come to the United States well before the respondent entered in August 1980. In fact, the respondent entered the United States 2 months after President Carter announced the use of ad hoc parole authority in response to the crisis in June of 1980. He therefore cannot be considered to be a refugee under the provisions of the Refugee Act.

We acknowledge the respondent's argument that Cubans who entered during the Mariel Boatlift were accorded a special immigration parole status pursuant to the Refugee Education Assistance Act of 1980, Pub. L. No. 96-422, § 501(e), 94 Stat. 1799, 1810 ("Refugee Education Assistance Act").[7] However, the statute does not, on its face, designate Cuban/Haitian Entrants as *refugees*. *Id.*; *see also Garcia-Mir v. Meese*, 788 F.2d 1446, 1451 (11th Cir. 1986) (recognizing the special parole status granted to Cubans who entered during the Mariel Boatlift). In fact, as the respondent acknowledges, the purpose of the provision was to treat Cuban and Haitian migrants as refugees for purposes of the Federal refugee resettlement program and most other Federal benefits and assistance. *See* Ruth Ellen Wasem, Cong. Research Serv., RS 21349, *U.S. Immigration Policy on Haitian Migrants* 8−9 (2011). There is no indication that the change was intended to modify the immigration laws. *See Garcia-Mir*, 788 F.2d at 1452.

As the United States Court of Appeals for the Eleventh Circuit has noted, the Refugee Education Assistance Act granted Cubans from the port of Mariel, Cuba, special parole status "only for the purpose of providing social welfare benefits." *Id.* at 1452. Notwithstanding this special status,

---

[7]  Section 501(e) of the Refugee Education Assistance Act defines the term "Cuban and Haitian entrant" as follows:

> (1) any individual granted parole status as a Cuban/Haitian Entrant (Status Pending) or granted any other special status subsequently established under the immigration laws for nationals of Cuba or Haiti, regardless of the status of the individual at the time assistance or services are provided; and
> (2)  any other national of Cuba or Haiti—
>   (A) who—
>     (i) was paroled into the United States and has not acquired any other status under the Immigration and Nationality Act;
>     (ii) is the subject of exclusion or deportation proceedings under the Immigration and Nationality Act; or
>     (iii) has an application pending with the Immigration and Naturalization Service; and
>   (B) with respect to whom a final, nonappealable, and legally enforceable order of deportation or exclusion has not been entered.

the court concluded that Cubans, like the respondent, "were paroled under the general alien parole statute, [section 212(d)(5) of the Act] and were thus treated no differently than any other aliens." *Id.*  As a result, the respondent's special status as a Cuban/Haitian Entrant does not establish that he is a "refugee" under section 207 of the Act.

Finally, we find it significant that the USCIS has stated in its policy manual that an alien designated as a Cuban Entrant is not a refugee under section 207 of the Act.

> Since 1959, thousands of Cuban nationals have been paroled or admitted into the United States, many for humanitarian reasons but not as refugees.  Although Cubans from the port of Mariel, Cuba, entered the United States shortly after the enactment of the Refugee Act of 1980 *and may have documentation that seems to indicate refugee status*, *they do not adjust status as refugees*.  Such persons who have been physically present in the United States for one year can adjust status under the Cuban Adjustment Act of 1966.

USCIS Policy Manual, *supra* (emphasis added).  Although we are not bound by the USCIS's policy manual, we find this provision to be further confirmation of our interpretation of the meaning of the term "Cuban Entrant."  *See, e.g.*, *Matter of C. Valdez*, 25 I&N Dec. 824, 826 n.1 (BIA 2012) (noting that a USCIS policy memorandum is persuasive rather than binding authority).

For these reasons, we are not persuaded that the respondent acquired "refugee" status within the meaning of sections 207 and 209(a) of the Act when he was paroled into the United States on August 25, 1980.  We therefore conclude that he does not qualify as a "refugee" for purposes of adjusting his status under section 209(a) of the Act in conjunction with a section 209(c) waiver of inadmissibility.

### B.  Asylee

Once the respondent set foot in the United States, he became statutorily ineligible for admission as a "refugee" under section 207 of the Act and was obliged to pursue a claim for "refugee" status, if at all, by means of a request for asylum under section 208.  *See Matter of M/V "Runaway,"* 18 I&N Dec. 127, 130–31 (BIA 1981).  We must therefore next consider whether the respondent was ever designated an "asylee" within the meaning of sections 208 and 209(b) of the Act.

The respondent's Form I-94 includes the phrase "Cuban Entrant" in a box corresponding to the purpose of his parole into this country.  However, this notation alone does not sufficiently establish that the respondent is an "asylee" for purposes of section 209(b) of the Act.  *See*

*Matter of Castellon*, 17 I&N Dec. 616, 619 (BIA 1981) (considering the "extraordinary circumstances" under which Cubans entered the United States in 1980 and noting that, because they lacked entry documents, they were paroled into the United States, where they could apply for asylum); *see also* Refugee Education Assistance Act, § 501(e), 94 Stat. at 1810.

Finally, although the respondent filed an asylum application in 1980 in accordance with section 208 of the Act, there is no indication that he was ever granted asylum. Moreover, the Immigration Judge pretermitted the respondent's 2012 application for asylum, and the respondent did not appeal that determination. Consequently, there is no basis for considering the respondent to be an asylee under section 208 of the Act for purposes of adjusting his status under section 209(b) of the Act with a section 209(c) waiver.

## V. CONCLUSION

The respondent is not eligible to adjust his status under sections 209(a) or (b) of the Act in conjunction with a waiver of inadmissibility under section 209(c) because he has not established that he was either admitted as a "refugee" within the meaning of section 207 or granted asylum under section 208 of the Act. Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.